FRANK REICHMUTH v. JACK ADLER, Appellant.—155 S. W. (2d) 181.

Division One, October 30, 1941.

*Leahy, Walther & Hecker* for appellant.

*Cox, Blair & Kooreman* and *Milton F. Napier* for respondent.

CLARK, J.—In this suit for personal injuries, tried to a jury in the circuit court of the City of St. Louis, the verdict was for defendant. The trial court sustained plaintiff's motion for a new trial for the stated reason that "the court erred in giving and reading to the jury instruction No. 3 offered by defendant." From this order granting a new trial defendant has appealed.

In response to the allegations of his petition, plaintiff's evidence tended to prove: that at the time he was injured he was engaged as an independent contractor in painting the windows on the outside of a two story building owned by defendant; plaintiff furnished his own equipment and employed his son to assist him; while painting they

stood on a scaffold suspended by ropes attached to the top of the building; each window was composed of three sections with the middle section on hinges so it could be opened by pushing the bottom of the section to the outside of the building; while plaintiff was standing on the scaffold and painting one of the first floor windows, the scaffold being from eleven to fifteen feet above the ground, one of defendant's employees (Alton) on the inside of the building suddenly, and without warning, opened the window against the scaffold pushing it away from the building and thereby causing plaintiff to fall to the ground and receive injuries.

Defendant's answer was a general denial coupled with a plea of contributory negligence which, so far as pertinent to this appeal, alleged "that plaintiff negligently and carelessly maintained and used a scaffold or staging while painting the windows on defendant's building without equipping the same with a hand rail or rope to support him or prevent him from falling from the said scaffold, when plaintiff, by the exercise of ordinary care for his own safety, would have done so."

Instruction number three given at defendant's request was as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff was engaged in painting the windows of defendant's building, and that in so doing he was using a scaffolding or staging owned or furnished by plaintiff, and if you so find and believe from the evidence that such scaffold was not equipped with a hand-rail or rope to support him or prevent him from falling from said scaffold, and that plaintiff would, in the exercise of ordinary care for his own safety, have used a scaffold equipped with a hand-rail or rope to prevent him from falling therefrom and that he failed to do so, and that such failure of plaintiff to so equip said scaffold, if you so find he failed to do, was negligence and directly contributed to cause him to fall and be injured, then, if you so find, plaintiff cannot recover of defendant and your verdict should be for defendant."

 A trial court has wide discretion in passing on a motion for new trial and, where such a motion is sustained, this court will be liberal in upholding the trial court's action. [Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 207; Schierloh v. Brashear Freight Lines (Mo.), 148 S. W. (2d) 747.] We will not reverse such ruling unless it clearly appears that the trial court has abused its discretion. [Schipper v. Truck Co. (Mo.), 132 S. W. (2d) 993.] In Hoepper v. Southern Hotel Co., 142 Mo. 378, l. c. 387, 44 S. W. 257, this court said:

"The presumption is always in favor of the correctness of the rulings of the circuit court. It has committed to it much discretion in the matter of granting new trials and this court should not interfere unless its discretion has clearly been abused. It is therefore uniformly

held that an appellate court will not interfere with the discretion of the circuit court in granting a new trial on the ground that the verdict is against the weight of the evidence. The proceedings are all in the presence of the court and it can better judge of the fairness of the trial than the appellate court which has before it the cold record only. For the same reason an appellate court should hesitate to interfere with an order granting a new trial on the ground that the instructions are misleading. The order is presumptively correct. The judge who presides over the trial, and who hears the arguments of the counsel and the construction given to the instructions, can detect inconsistencies and misleading features which might escape the observation of appellate judges.''

█ In order to convict the trial court of error in granting plaintiff (respondent) a new trial, it must clearly appear that there was some substantial evidence that plaintiff was negligent in the manner alleged in defendant's answer and that such negligence of plaintiff directly contributed to cause his injury. [Perkins v. K. C. Southern Ry. Co., 329 Mo. 1190, 49 S. W. (2d) 103.]

The scaffold upon which plaintiff was working consisted of a ladder, about sixteen feet long, to the rungs of which were attached boards extending the full length of the ladder. At each end of the scaffold were pulleys through which ropes ran to the top of the building where they were fastened by hooks. Thus the scaffold could be raised or lowered to a desired height and kept there by tying the ropes at each end of the scaffold. These ropes also extended to the ground. Defendant proved by one of his employees (Sebring) that he had seen painters use a scaffold with an attachment an indefinite distance above the back side thereof through which ran a guard rail or guard rope the full length of the scaffold. Another witness for defendant (his foreman, Ed Adler) in describing the scaffold used by plaintiff said: ''The stirrup had a place to put a cross rail or rope on the outside of it as they usually have on most of these stagings. There was no guard rail or rope there. There was no safety rope █ hanging down alongside of the building.'' Appellant does not contend that this testimony was sufficient to raise the issue of contributory negligence, but, on this issue, relies on the testimony of plaintiff and his son.

Plaintiff's testimony was substantially as follows: that the scaffold was not equipped with a guard rail or rope at the back; there was no safety rope running from the top of the building to the ground; that such a guard rail, guard rope or safety rope is used by painters only when working at a height of three or four stories, fifty feet or higher; that plaintiff has been a painter for thirty-five years and has never used a guard rail or rope, or safety rope, while working at the height shown by the evidence in this case; that such appliances would not have prevented plaintiff from being injured; that the guard rail or rope can only be placed at the back of the scaffold and that plaintiff

fell forward between the scaffold and the building; that the scaffold can be easily pushed away from the building, but will not move unless some one pushes it; that plaintiff had told defendant's employees to stay away from the windows.

Defendant's foreman also testified that he had instructed defendant's employee, Alton, not to work near where plaintiff was working; that Alton had no business at the window where plaintiff was working and he knew of no reason why plaintiff should suspect him being there.

Plaintiff's son gave testimony substantially like that of the plaintiff and also said: that a safety rope is sometimes fastened to the top of a building and extends to the ground; that the purpose is to furnish something to which to hold to keep from falling; that a lot of fellows use such safety ropes on high buildings and keep them in their hands all the time; that the nearer the scaffold is to the ground the easier it is to swing, because it is suspended from a greater height.

Both plaintiff and his son said the place where plaintiff was hurt was so low that plaintiff could have jumped off without injury if he had been given any warning.

Plaintiff was under the duty to exercise ordinary care for his own safety; that is, such care as an ordinarily prudent person would usually exercise under like or similar circumstances. [45 Corpus Juris, 687, section 53.] He was not compelled to adopt the safest known methods or appliances. [Steinhauser v. Spraul, 127 Mo. 541, l. c. 562, 30 S. W. 102.] In the absence of a standard fixed by legislative enactment or judicial decision, the usual test of ordinary care in methods of work or the use of appliances is what has been found to be reasonably safe by the common usage of the trade or occupation under similar circumstances. In Minnier v. Railway, 167 Mo. 99, 66 S. W. 1072, it was said that the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business, and further:

"No man is held to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better way or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community." This doctrine received approval in Chrismer v. Bell Telephone Co., 194 Mo. 189, 92 S. W. 378, and Brands v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511; also in Smith v. Harbison-Walker Refactories Co., 340 Mo. 389, 100 S. W. (2d) 909, l. c. 922, with the

following reservation quoted from Schaum v. Southwestern Bell Telephone Co., 336 Mo. 228, l. c. 234, 78 S. W. (2d) 439: "Of course, no usage can make a practice, which is inherently unreasonably dangerous, reasonably safe (Texas & P. Railroad Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905); but often no other evidence, of what is a reasonably safe method of conducting the complicated work of modern industry, is available except the methods tested by usage in similar work."

In the instant case, appellant attempted to prove a custom and usage of painters to equip their scaffolds with guard rails or ropes and also to provide safety ropes suspended from the top of the building. In this appellant wholly failed, for the only evidence on this point was that such equipment is never used at the height at which the plaintiff was working. True, one of appellant's witnesses (Sebring) said he had seen scaffolds equipped with guard rails or guard ropes, and another witness (Adler) said that most scaffolds had such equipment, but neither witness testified to a general usage of the trade under the conditions in which plaintiff was working. Nor was there any substantial evidence that the absence of a guard rail or guard rope directly contributed to cause plaintiff's injuries, since such a guard rail or rope would have been behind plaintiff and he fell forward.

As stated, appellant also failed in his attempt to produce evidence of a general custom of the trade for the use of safety ropes. On the question of proximate cause, appellant has a stronger argument as to the absence of a safety rope than as to the absence of a guard rail or rope at the back of the scaffold, for plaintiff's son testified that some painters worked with a safety rope in one hand all the time. Of course, that method of work would have furnished some protection to plaintiff. But, since there was no proof of a general custom to use safety ropes in that manner, the issue of contributory negligence would not arise without some showing that it was inherently unreasonably dangerous for plaintiff to work, under the conditions shown, without a safety rope.

There is another and all-sufficient reason why the absence of a safety rope did not justify appellant's instruction on contributory negligence, to-wit; the lack of such a safety rope was not embraced in appellant's answer nor included within the terms of his instruction number three. Both the answer and instruction complain that the *scaffold* was not equipped with a hand rail or rope. This language could only refer to a guard rope which is sometimes attached to the back of the scaffold instead of a guard rail. It could not refer to a safety rope which would not be attached to the scaffold. The evidence shows that a safety rope would hang from the top of the building, independent of the scaffold, and thus furnish some protection even if the scaffold should fall.

Although the wording of instruction number three did not embrace the lack of a safety rope, the jury may have been confused into a consideration of such defense. We do not know what construction was placed on this instruction by the parties at the trial, for we do not have the arguments of counsel before us, but appellant, in his briefs in this court, argues the lack of a safety rope as an element of contributory negligence, thereby taking the position that the lack of a safety rope was embraced within the answer and the instruction. Since counsel take this position, which we think is erroneous, it is quite possible that the jury took the same view. At any rate the trial court was in a better position to determine the matter than we are.

On the whole record we are not convinced that the trial court abused its discretion and the order for a new trial is accordingly affirmed. All concur.