FRANK DE MAIRE, Appellant, v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Respondent, No. 41092—222 S. W. (2d )93.

Division Two, July 11, 1949.

*Joe Crain, Sylvan Bruner, Sizer & Myres, Wm. J. B. Myres* and *Edward V. Sweeney* for appellant.

458

*T. J. Cole* and *E. A. Barbour, Jr.,* for respondent.

460

 ELLISON, J.—The plaintiff appeals from an order of the circuit court of Christian county sustaining the motion for new trial of the defendant-respondent trustee of the Missouri Pacific Railroad Company, in plaintiff-appellant's suit for damages for personal injuries sustained while endeavoring, with the help of a co-employee, to close and latch the door of a sub-floor hopper on a railroad coal car at Cornell, Kansas. The jury had returned a verdict for $15,000 in favor of the appellant. Hence the appellate jurisdiction is in this court under Art. V, Sec. 3, Const. 1945.

We need not go into the details of the casualty, since only one point assigning error need be reviewed. This concerns the trial court's action in sustaining the motion for new trial on the ground that appellant's counsel had been guilty of prejudicial error in the cross-examination of the respondent's witness B. F. Thomas, a car inspector, concerning the Missouri Pacific Hospital Association, of which appellant was a dues paying member, and the practice of the hospital to disclose information concerning patients' condition to railroad claim agents. Appellant had pleaded in his petition extensive permanent injuries to his arm, neck and general system, and also enforced expenditures of large sums of money for medical attention, hospitalization, nurse hire and drugs. These cover nearly a full page of his petition as set out in the typewritten transcript here. Nearly seven pages of the transcript on his direct examination deal with his injuries.

The testimony for appellant was that his injuries consisted of severe and extensive inflammation and swelling in his right hand and arm, a lump or cyst on the back of his wrist, kernels under his arm pit indicating infection of a nerve leading to his heart, and producing fever, severe pain, sleeplessness and permanent heart trouble which probably would result fatally. He was 61 years old and had consulted

four physicians, all of whom he saw in Pittsburg, Kansas, where he lived. Of these Dr. Gish and Dr. Smith were railroad doctors. Dr. Newman was his family physician. He saw him first about five months after the casualty, and from then on about 100 times. Dr. Newman was the only medical witness for appellant.. He said his bill would be $225. Appellant said he had spent $25 or $30 for medicine and admitted his physician Dr. Hartman had told him it would be necessary for him to go to a hospital. But he did not go to the Missouri Pacific Hospital in St. Louis because, as he said, "they" meaning the railroad or its claim agent, did not *send* him.

Dr. Smith was the only medical witness for respondent. He had seen appellant twice, once in Pittsburg, Kansas, three days after the casualty, which occurred on January 22, 1947, and a second time in Springfield, Missouri, a few days before the trial, which began on May 27, 1948. He found no heart condition either time, and on the latter occasion considered appellant's general condition much improved. His weight had increased and his blood pressure decreased, and the cyst on his hand had reduced in size about one-half.

It was respondent's contention that appellant had been negligent and haphazard in procuring regular and proper treatment; that he had failed to avail himself of the facilities of the Missouri Pacific Hospital Association, of which he was a member, in the treatment of his condition; and by so doing had failed to reduce his medical and other expense. He was interrogated about that on cross-examination and gave the answers above stated, without objection by appellant's counsel. Neither did appellant claim the railroad hospital would not afford proper treatment, or that he preferred to entrust himself to the other medical care. His only explanation was that they did not "send" him to the St. Louis hospital. All this evidence was in refutation of the allegation in paragraph VI of appellant's petition that he had been "*forced* to expend large sums of money for medicine, medical attention, hospitalization, nurse hire and drugs by reason of his injuries" (italics ours).

Later respondent called as a witness B. F. Thomas, who was a car inspector and had been in the employment of the respondent for 26 years. Most of his testimony was about the design and structure of railroad coal cars with hoppers, the proper method of closing the hoppers, and whether the door of the particular car here involved was "sprung" or bent. But in addition to that he was interrogated concerning the Missouri Pacific hospitalization plan. No objection was made to this except that the witness had not shown himself qualified to testify on that subject. He stated he was familiar with it and the objection was overruled. Then he testified that employees paid "so much every month" and that they got "full benefits", that is "anything necessary, they doctor you whether you are injured or

sick.'' If any employee gets injured he could go to the hospital and receive all necessary medical attention without cost.

Under cross-examination by appellant's counsel he said the employee would get an order to go to the hospital from his foreman. He didn't know whether railroad doctors could issue the orders. Then he was asked: ''Do you know if you went to the Missouri Pacific Hospital as an injured employee, the claim department of the Missouri Pacific received regular reports from the hospital about your condition and about how long you will stay there, and the nature of your injuries, and if you go there, the hospital doctors come to testify against you?''

Respondent objected on the ground that the interrogation embodied three questions in one, and the court overruled the objection. The witness asked that the question be repeated. Appellant's counsel did so and the witness answered both as follows: ''You know when you go into the Missouri Pacific Hospital for treatment as an injured employee the Claim Department of the Missouri Pacific Railroad receives regular reports from the hospital, and the attending railroad physicians report on your condition and future health, and about the length of stay you will be there? A. I suppose they make some kind of a report on it,—yes. And you know the doctors come from the hospital and testify against you for the railroad? A. Well, I don't know, but I suppose they do,—I don't know.''

This time respondent's counsel did not interpose an objection. But in the 12th assignment of their motion for new trial it was urged that the court erred in overruling the foregoing objection of respondent's counsel to the question as first asked (quoting it) — ''Because said question was particularly vicious and prejudicial to the defendant for the reason that the obtaining of medical attention by the plaintiff of competent medical advice was an important element in the defense of the case, and also had a tendency to discredit defendant's medical testimony, who the evidence showed was a Doctor for said Missouri Pacific Hospital Association and had examined plaintiff in behalf of the defendant.''

In passing on the respondent's motion for new trial, the trial court indicated a tentative view that the plaintiff-appellant's instructions 2 and 3 were erroneous. This,. the court said, was because instruction 2 submitted only the negligence of the defendant-respondent (in failing to furnish a jack to close the hopper door). And instruction 3 submitted only the contributory negligence of the plaintiff-appellant in the abstract, without specifying any factual basis upon which that finding might be made. The court said this gave the jury a roving commission to find the plaintiff-appellant guilty of contributory negligence on any ground, and produced a state of confusion in apportioning the negligence of the two parties under the Federal Employers' Liability Act. But insofar as that

was erroneous it was error against the plaintiff-appellant, and he got a satisfactory verdict and does not complain of it. Neither did the defendant-respondent.

The point on which the trial court actually sustained the motion for new trial was the 12th ground, set out in the second preceding paragraph bearing on the cross-examination of the witness B. F. Thomas about the Missouri Pacific Hospital. It must be conceded that respondent's counsel did not make a proper objection when that testimony came in. When the interrogation was first made counsel complained only that it included three questions, and when it was repeated none at all was made. But the motion for new trial did present the point now urged, and respondent also invokes Sec. 119 of the Civil Code, Laws Mo. 1943, §119, p. 389, Sec. 847.119 Mo. R. S. A., which provides: "Section 119. Not later than 30 days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor."

As will be seen, under this statute it was immaterial whether a motion for new trial was filed or not. See 2 Carr, Missouri Civil Procedure, p. 37, §857, and our Rule 3.25. In passing on the point the trial court said: "The court allowing counsel for the plaintiff on cross examination to interrogate the witness B. F. Thomas as there set forth and to reiterate the same on further cross examination of such witness was erroneous as such evidence was *as highly inflammable in view of the entire record of this case as any testimony* ■ *that could go before 12 men and did deprive the defendant of a fair and impartial trial in this case* (italics ours).

"I am putting the burden of allowing such evidence to go before the jury *squarely on the shoulders of the court* and in my opinion such evidence was not admissible on any theory, and was as erroneous as if in a trial if a question should arise why a person didn't go into court and bring action for debt or damage to allow a witness to give answer; that the reason such wasn't done was that the court was influenced by someone else, and (don't you know that the court would decide against you) as each line of questioning goes further than speculation and even into the field of mind reading of some person or persons that the witness never saw, never heard of and possibly never knew was in existence." (Italics ours)

It will be noted the trial court held the cross-examination of the witness Thomas was "highly inflammable . . . and did deprive the defendant of a fair and impartial trial in this case." Further the court said: "I am putting the burden of allowing such evidence to go before the jury squarely on the shoulders of the court." Since the defendant-respondent failed to object to the cross-examination of the witness on that ground at the time, we would have no right to

convict the trial court of error in permitting it, *if* the court, itself, had not acknowledged the error when passing on the motion for new trial. But since it did and took the responsibility for it, we see no ground for interfering with its ruling.

We agree with the court that the cross-examination was prejudicial. And this was true, not merely as going to the measure of damages, as appellant contends; but as tending to discredit and prejudice respondent on the whole case. Appellant's counsel injected thereinto the issue that the Missouri Pacific Hospital Association maintained a sort of entrapment or spy system whereby physicians at the hospital would report the condition of patients to the claim department and come into court and testify against them in their personal injury actions. And the cross-examination did that although the witness had not actually testified to it. When the witness Thomas was interrogated on that point he merely said, "I *suppose* they (the physicians) make some kind of a report on it—yes." And as to the physicians' testifying against the claimant he said, "Well, I don't know, but I *suppose* they do—I don't know." (Both italics ours). Furthermore appellant apparently was not averse to having railroad physicians know his condition. In the beginning he voluntarily was under the care of a Dr. Gish and a Dr. Smith at Pittsburg, Kansas, for about 12 days each, and when he was examined by the same or another Dr. Smith in Springfield the first time one of his attorneys was present. And the only reason he gave for not going to the railroad hospital in St. Louis was that they did not *send* him.

Appellant has brought up in his transcript the argument of respondent's counsel to the jury, wherein the latter asserted the Missouri Pacific hospital in St. Louis was "not the railroad company's hospital, it is the employees'. These doctors—they talk about being railroad doctors, they are employed by the employees of the Missouri Pacific." However, the transcript does not contain the opening and closing jury arguments of plaintiff-appellant's counsel. Appellant argues here that the foregoing cross-examination of witness Thomas was competent to *refute* the argument of respondent's counsel. But of course it is the other way around. The prejudicial cross-examination came first during the trial, and the jury argument of respondent's counsel attempted to repair the damage afterward. When Thomas was testifying the only objections of appellant's counsel to his testimony were directed against his *qualifications* as a witness on the point, and not to the subject matter of his testimony.

In our opinion the only defense of the prejudicial cross-examination of witness Thomas that possibly could have been made on the whole record, would have been that respondent's counsel did not object thereto at the time on the grounds stated later by the trial court. But as stated in 2 Carr, Missouri Civil Procedure, §857, p. 38, before the enactment of the Civil Code the rule had long been that

an action was deemed to be in the breast of the trial court during the remainder of the term at which the judgment was rendered.

Under the statutes, Sec's 847.115, 847.119, Mo. R. S. A., the court had the discretionary power to grant one new trial. That power, it is true, is discretionary only as to questions of fact and matters affecting the determination of issues of fact. Schipper v. Brashear Truck Co. (Mo. Div. 1) 132 SW. (2d) 993, 995(2), 125 A. L. R. 674. But the court's action here belongs in that category. And it was immaterial that respondent had failed to object and except at the time. Beer v. Martel, 332 Mo. 53, 60(7), 55 SW. (2d) 482, 484(11). In such circumstances we should be liberal in deferring to the trial court's action, even though we may feel, on the cold record, that as a nisi prius court we might have ruled otherwise—this because of the trial court's better knowledge of the trial atmosphere and incidents, and their effect on a jury. State ex rel. Spears v. Hughes, 346 Mo. 421, 424(3), 142 SW. (2d) 3, 5(3); Reichmuth v. Adler, 348 Mo. 812, 816-7 (1, 2), 155 SW. (2d) 181, 182-3 (1-3).

For these reasons the action of the trial court in granting a new trial is affirmed. All concur.