Johnnie W. KILLIAN, Appellant,

v.

WHEELOC ENGINEERING COMPANY, Respondent.

No. 48469.

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1961.

Barnhart & Sommers, Don B. Sommers, St. Louis, for plaintiff-appellant.

John J. Cole, Heneghan, Roberts & Cole, St. Louis, for defendant-respondent.

BARRETT, Commissioner.

Johnnie W. Killian, a common laborer employed by a general contractor, was injured when he stepped from a ladder into a pile of metal duct work on the basement floor of a house under construction. According to Killian the pieces of tin were left at the foot of the ladder by a tinner em-

ployed by a subcontractor, Wheeloc Engineering Company, who had the contract to install the furnace and duct work. In his suit against the subcontractor for negligent injury a jury returned a general verdict in his favor and fixed his damages at $29,-000. The trial court sustained the defendant subcontractor's motion for a new trial upon specified grounds 15, 19, 20 and 21 and granted a new trial upon all issues. Killian has appealed and contends that the order granting a new trial is not sustainable upon any of the four grounds, or, if it is that a new trial should be limited to the issue of damages only. On the other hand, the respondent contends that the plaintiff did not make a submissible case, that he was guilty of contributory negligence as a matter of law and in any event that the trial court appropriately granted a new trial for the specified reasons and for many other reasons as well.

The subcontractor's contention that plaintiff failed to make a submissible case is threefold: first, that he had to rely on circumstantial evidence and it is urged that the necessary facts to support the verdict may not be inferred without resort to conjecture and mere speculation; second, that he is conclusively bound by the testimony of defendant's tinner, called as a plaintiff's witness, that the tinner did not leave or stack the sheet metal near the bottom of the ladder, and third, that he failed to look "as he stepped off the ladder" and is therefore guilty of contributory negligence as a matter of law.

The tinner, and he was the only tinner on "the(se) jobs," did say that he did not "at any time on that job *stack* any pipe in front of a ladder in the basement of any of those homes." However, he was the tinner who installed all of the furnace and duct work for the defendant in a "whole flock of houses" and some of his duct work was "right where the stairway comes out." While all of the furnace work was a "pattern job" and the duct work was prefabricated at specified lengths and sizes and supposed to fit, there were short length pieces of tin and it was necessary to cut some of the pipe to the registers, "they have to be cut on the one side." And, it is the custom of the trade (one of the defendant's points in the trial) as it is with plumbers and electricians, when they "make a fitting," to "drop them and leave them lie" and it is the duty of the general contractor's laborers to clean up "the trim and the scrap." In the house in which the plaintiff was injured the stairway had not been installed and the only entrance to the basement was a temporary "homemade ladder" from the first floor.

Killian had been in the basement the day before, Wednesday afternoon, and the tinner was then engaged in installing the duct work for the furnace along the west wall and no other work was then being done in the basement. The next day, April 17, 1958, shortly after eight o'clock, he returned to the basement to see how much cement would be needed to fill an open space between the basement wall and the floor joist and the same tinner was installing duct work in the northwest corner. On that trip Killian did not see pieces of metal around the ladder. When he left the basement his foreman asked him to perform some task in another house and when he returned about an hour and a half later with his bucket of cement he says that he looked or "glanced down in the basement and I didn't see anything." He then proceeded down the ladder backwards, the bucket of cement in his right hand, and as he got to the bottom of the ladder "I started to step off as I half-turned I saw the metal, I jumped to miss it and I struck my right leg in it." Later he said that he looked before he started down the ladder and saw nothing on the floor, but "as I partially turned to make my step off the ladder, I saw it," he had released his "hold" and "I started to push myself—my left foot was still on the ladder—to shove myself to miss the metal." On cross-examination he said that there was "a round pile" of metal and debris two or three feet square, one-half to one foot back from the ladder. He could not say exactly what was

in the pile of debris and he could not precisely describe the pieces, but he said that there was some sheet metal and duct work, some round pieces and one "shirred piece" and it was "Round furnace ducting they put the heating in and square."

■ Thus, plainly, there was testimony other than the tinner's that pieces of furnace ducting had been left on the floor near the foot of the ladder and the plaintiff was not conclusively bound by the tinner's testimony that he had not "stacked" any furnace material near the ladder. Lay v. McGrane, (Mo.) 331 S.W.2d 592; Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295. The respondent poses a series of questions which it says are unanswered and may not be inferred except by resort to mere speculation and guesswork, but it is not necessary to analyze and answer these questions in this opinion. As indicated, whether there was furnace ducting material on the floor was not dependent entirely on circumstantial evidence, how and when it got there may be but the inference that it was there through the agency of the defendant's tinner is certainly permissible from the circumstances. 65 C.J.S. Negligence § 266, p. 1199. Even though it was the custom of tinners to leave the fittings where they fell and ultimately the duty of common laborers to remove all debris (Komeshak v. Missouri Petroleum Products Co., (Mo.App.) 314 S.W.2d 263), it does not necessarily follow that the defendant's employee had not breached the duty of due care to other employees on the job. Some facts were necessarily established circumstantially, to illustrate, there is no positive evidence as to the particular house in which Killian was injured. The house was in the eleven hundred block on June Avenue, Killian thought it was "next to the house that the basement collapsed under the house, the east wall, it was next to that house and I was thinking it was 1148 and I haven't been back out there." Incidentally, the development of this subdivision involved the construction of three to four hundred houses of identical dimensions and Killian's employer was the general contrac-

tor and the respondent was the subcontractor to install all furnace and duct work. It is not necessary to consider the numerous matters the respondent has raised against the plaintiff's case on its substantive merits, the only concern here is whether, prima facie, the plaintiff made a submissible case. The respondent was under a duty to exercise reasonable care not to cause injury to the employees of others, including the employees of the general contractor, and of course is liable for the negligence of its employees. 57 C.J.S. Master and Servant, § 610, p. 381; annotation 38 A.L.R. 403, 455; Miller v. Brunson Construction Co., (Mo.) 250 S.W.2d 958, and see for the general contractor's liability 20 A.L.R.2d 868. The noted and illustrative evidence is sufficient to indicate that the respondent's negligence and the plaintiff's contributory negligence were jury questions, or, that the plaintiff's evidence made a submissible case. Neither is it necessary to match cases and demonstrate, the following cases (not cited by the parties) indicate the circumstances, the reasons and the applicable general rules. Carter v. John Hennes Trucking Co., 7 Cir., 210 F.2d 443; McGeary v. Reed, 105 Ohio App. 111, 151 N.E.2d 789; Ignagni v. A. J. Peters & Son, Inc., 147 Cal.App.2d 661, 305 P.2d 953; Liddle v. Collins Construction Co., (Mo.) 283 S.W.2d 474; Reichmuth v. Adler, 348 Mo. 812, 155 S.W.2d 181; Kichling v. Humes-Deal Co., (Mo.App.) 16 S.W.2d 637.

■■ As for the court's order granting a new trial, we are not concerned here, as the appellant indicates, with whether the $29,000 verdict is excessive, or with whether there is evidence to support the award, or, had the trial court ordered a remittitur, with whether there is substantial support for the remittitur. The trial court sustained the motion for a new trial on specifications 15, 19, 20 and 21, the last two grounds are that (a) the verdict of the jury is the result of bias, passion and prejudice on the part of the jury and (b) the verdict of the jury is so excessive as to indicate bias, passion and prejudice on the part of the jury in favor

of plaintiff and against defendant. These are discretionary grounds for granting a new trial and the problem here is whether, viewing the record favorably to the court's views, there is evidentiary support for the ruling. Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R. 2d 972; Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 8 A.L.R.2d 710. Killian's initial injury was a four or five inch cut on his right leg requiring four or five stitches. The wound became infected and did not respond to drugs or other medication, one doctor made the diagnosis of pyogenic granuloma, and there were several incisions and skin grafts, but there were continual reinfections resulting in a permanent "draining sinus." It was the opinion of his medical experts that the plaintiff's injury was permanent. On the other hand, a surgeon who had treated the plaintiff, "excised the wound and removed it completely and resutured" and put on a "split-thickness skin graft," said that as of October 28, 1959, the wound had healed. An industrial surgeon said that there was a "drainage sinus," the exuding material being "seropurulent." He thought the infection was in the soft tissue and could be removed, and this was his conclusion, "I don't believe it is permanent, and I think it can be cured." Again without further detailed elaboration, the defendant's evidence is substantial and this court cannot say as a matter of law that it does not support the trial court's finding. Combs v. Combs, (Mo.) 295 S.W.2d 78.

An order granting a new trial on all issues, rather than on damages alone, is also reviewable for an abuse of discretion only. Annotation 29 A.L.R.2d 1199. The trial court has specifically found that the verdict was the result of passion and prejudice on the part of the jury and in addition to the excessiveness of the award the court evidently considered other trial matters, specification 15, (Bailey v. Interstate Airmotive, Inc., supra) and in the face of that finding, upon this record, it may not be said that the verdict should not be set aside in its entirety. Taylor v. St. Louis Public Service Co., (Mo.) 303 S.W.2d 608; Williams v. Kansas City, (Mo.) 274 S.W.2d 261.

In this view of the appeal it is not necessary for this court to consider the correctness of instructions and numerous other matters raised by the respondent. For the reasons indicated the order is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.