**Todd ERDMAN and Tracy Erdman, Plaintiffs/Respondents,**

v.

**CONDAIRE, INC., and Sachs Electric Company, Defendants/Appellants.**

**Nos. ED 80447, ED 80448.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 3, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2003.

Application for Transfer Denied March 4, 2003.

James E. Whaley, John P. Rahoy, T. Michael Ward (Condaire), Ruth A. Przybeck (Sachs), St. Louis, MO, for appellants.

Daniel T. Ryan, St. Louis, MO, for respondents.

ROBERT G. DOWD, JR., Presiding Judge.

Plaintiffs, Todd Erdman and his wife, Tracy Erdman, brought a suit against Condaire, Inc., and Sachs Electric Company to recover damages for injuries Todd Erdman sustained in a fall through an opening in the floor of a building under construction. The jury returned a verdict in favor of Todd Erdman for $700,000 and Tracy Erdman for $235,000 on her separate consortium claim. Condaire, Inc., and Sachs Electric Company appeal contending the Plaintiffs failed to make a submissible case, instructional error, and error

for failing to conduct a hearing to determine whether two jurors intentionally failed to disclose information during voir dire. Because we find the Plaintiffs failed to make a submissible case, we reverse and remand with instructions.

The facts may be summarized as follows: Todd Erdman (Erdman) was employed by Interior Construction Services (ICS) as a carpenter. During July of 1998, ICS was one of several subcontractors engaged in a two-level expansion project at Sigma Chemical Company (Sigma). Sigma had entered into a construction management contract with Fru–Con Construction Company (Fru–Con) making Fru–Con the general contractor for the construction. As general contractor, Fru–Con agreed to be responsible for general safety at the construction site. As part of its responsibilities, Fru–Con entered into subcontracts with Condaire, Inc. (Condaire), and Sachs Electric Company (Sachs) to install load cells on the vessels that would ultimately house chemicals. As part of their agreement, Condaire and Sachs contracted to take the necessary precautions to avoid injuries to other workers and barricade all floor openings resulting from their work.

When construction began at the Sigma plant, Fru–Con arranged to have the cement subcontractors pre-form large holes in the plant floor to accommodate the vessels with three legs and install a four-inch steel kick plate around the openings. The opening in which each tank was placed appeared as a large circle for the vessel with three rectangular holes along the perimeter for the feet and load cells. Under the three legs of each vessel, there was to be an electronic weighing device called a load cell. Fru–Con ordered that all floor hole penetrations on the project be covered. Fru–Con carpenters fabricated and installed wooden plywood covers. Fru–

Con also ordered that all vessels be covered with opaque tarps to protect them. Fru–Con also conducted several daily safety inspections. After the vessels were installed, Condaire worked with Sachs to place the load cells in each of the feet. The installation of the load cell in the reactor room where the accident took place was completed on June 23, 1998.

On July 16, 1998, Erdman arrived for work at the Sigma plant. He was taken to the reactor room where ICS would be working that day. Erdman saw a tarp draped over the vessel that occupied the room, and that the tarp extended onto the floor. Erdman was carrying materials back and forth to a co-worker. On one trip, Erdman stepped on the tarp and his right leg went into the space between the load cell and the foot of the vessel causing him to fall hitting his groin area on the steel kick plate outlining the hole. In his fall, Erdman severed his urethra, for which he later underwent reconstructive surgery. Upon investigation, Fru–Con discovered the wooden cover that should have been placed over the load cell area standing against a wall about fifteen feet from the load cell area.

Erdman and his wife Tracy Erdman filed a negligence suit against Condaire and Sachs claiming that one or both of the Defendants removed the wooden cover from the load cell opening, failed to replace the wooden cover over the load cell opening, and/or failed to warn Erdman about the load cell opening.[1] Tracy Erdman also filed a loss of consortium claim. The jury awarded Erdman $700,000 and Tracy Erdman $235,000 on her separate consortium claim. Condaire and Sachs filed motions for judgment notwithstanding the verdict and alternative motions for new trial and remittitur and several other post-trial mo-

---

1. Erdman received workers' compensation benefits from Fru–Con.

tions. The trial court denied all post-trial motions. Both Condaire and Sachs filed notices of appeal and their appeals were consolidated.

Because Condaire and Sachs's points on appeal are substantially similar, we will address them together. In its first point, Condaire contends the trial court erred in denying its motion for judgment notwithstanding the verdict because Erdman failed to make a submissible case. Sachs argues the trial court erred in denying its motion for directed verdict because Erdman failed to make a submissible case. Specifically, both Condaire and Sachs argue they did not have a duty to Erdman at the time of his injury as subcontractors because they did not create the dangerous condition or have responsibility for and control over the load cell area.

■ The standard of review of a trial court's denial of motions for directed verdict and judgment notwithstanding the verdict are treated the same and the primary inquiry is whether the plaintiff has made a submissible case. *Vintila v. Drassen,* 52 S.W.3d 28, 38 (Mo.App. S.D.2001). To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 338 (Mo. App. E.D.2000). Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law. *Id.* at 339.

■ In determining whether a plaintiff made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Id.* We will presume the plaintiff's evidence is true and disregard any of the defendant's evidence that does not support the plaintiff's case. *Id.* We will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Id.* We do not supply

missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* A party is bound by the uncontradicted testimony of the party's own witness, including that elicited on cross-examination. *Simpson v. Johnson's Amoco Food Shop, Inc.,* 36 S.W.3d 775, 776 (Mo.App. E.D.2001); *Eidson v. Reproductive Health Services,* 863 S.W.2d 621, 626 (Mo.App. E.D.1993).

■ In any negligence action, the plaintiff must establish the existence of a duty on the part of the defendant to protect the plaintiff from injury, failure of the defendant to perform that duty, and that the plaintiff's injury was proximately caused by the defendant's failure. *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 463 (Mo. banc 1998). Here, to recover on his negligence claim, Erdman had to show, by substantial evidence, that Condaire and Sachs owed him a duty at the time of his injury. Condaire and Sachs maintain Erdman failed to satisfy this element because they were not under a duty to make the load cell area safe for Erdman at the time of his injury in that they did not create the dangerous condition, and they had no responsibility for and control over the area in which Erdman was injured.

■ Generally, the general contractor occupies the position of a possessor of the property in relation to persons on the land while the work is in the contractor's charge and has a duty to use ordinary care to prevent injuries to invitees. *Wilson v. River Market Venture, I, L.P.,* 996 S.W.2d 687, 693–694 (Mo.App. W.D.1999). In contrast, a subcontractor does not stand in the shoes of the landowner for the purposes of determining liability for any injury on the premises during the course of construction. *Id.* at 696.

In determining whether Erdman made a submissible case under subcontractor lia-

bility, we must determine the duty Condaire and Sachs owed to Erdman at the time of the injury. Condaire and Sachs rely on *Mino v. Porter Roofing Co.*, 785 S.W.2d 558 (Mo.App. W.D.1990) to argue they did not owe a duty because they did not create the dangerous condition, and they had no responsibility for and control over the area in which Erdman was injured. Erdman relies on *Killian v. Wheeloc Engineering Co.*, 350 S.W.2d 759 (Mo. 1961) to assert there is no requirement to show Condaire and Sachs had control over the area where he was injured. We first must determine under these facts whether *Mino* or *Killian* applies.

*Mino* sets forth the general propositions that control the liability of subcontractors to employees of other contractors injured on a construction site:

> *The [sub]contractor is liable where he is in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress.* [citing case]. If the instrumentality causing the harm is under the control of the defendant [sub]contractor and the plaintiff is injured while in a work area common to employees, the defendant owes a duty of care to avoid causing such injury. [citing case]. A[sub]contractor who supplies equipment or devices which are to be used by employees of others on the construction job, owes a duty to make the device safe for its intended use. [citing case]. (Emphasis added.)

*Mino*, 785 S.W.2d at 561. In *Mino*, the defendant subcontractor was responsible for resurfacing a roof that had a preformed opening, which would later house air conditioning units. *Id.* at 559. At the time of the plaintiff's accident, the work was substantially complete. *Id.* The openings were covered with plywood and styrofoam to protect the building from rain. *Id.* On the day of the accident, the plaintiff, who worked for the air conditioning contractor, stepped onto an opening covered with only styrofoam and fell through to the floor below. *Id.*

The jury returned a verdict for the subcontractor and the plaintiff appealed. *Id.* The plaintiff argued the trial court erred in submitting a verdict-directing instruction requiring the plaintiff to show the subcontractor had responsibility for and control of the area where the plaintiff fell. *Id.* at 560. The appellate court rejected the plaintiff's argument holding that the jury was properly instructed that the subcontractor's "liability depended on proof that [the subcontractor] had responsibility for and control over the area of the roof openings where [the plaintiff] was injured." *Id.* at 561. In its holding, the court observed the subcontractor owed no duty to the plaintiff because the plaintiff presented no evidence to prove that the subcontractor created the dangerous condition; the location of the accident was not a common work area; and the subcontractor had no control over or right to control the plaintiff's conduct in the performance of his duties. *Id.* The court found that the undisputed evidence showed that another contractor was responsible for the roof area where the openings were located. *Id.*

In contrast, Erdman contends under *Killian* there is no requirement to show Condaire and Sachs had control over the area where he was injured. In *Killian,* the injured plaintiff was an employee of the general contractor and suffered cuts from scraps of tin, which the defendant subcontractor had left in a common work area. *Id.* at 760–61. In *Killian,* the defendant subcontractor was the only subcontractor that produced the tin shavings, and the defendant subcontractor's employee was working in the basement as a tin-

ner. *Id.* at 761. When the plaintiff left the basement area to perform another task, he did not notice pieces of metal around the ladder on which the tinner was standing. *Id.* When the plaintiff returned one and a half-hours later, he was injured by the metal shavings around the ladder. *Id.* In finding a duty, the *Killian* court focused on the subcontractor's liability for creating the dangerous condition and did not require a showing that the subcontractor was in control of the area. *Id.* at 762. Moreover, in *Killian,* the facts were such that the defendant created the dangerous condition, and the plaintiff was injured in a common work area where both the plaintiff and defendant were working. *Id.*

The *Mino* court distinguished *Killian* by pointing out that the plaintiff in *Mino* did not present evidence to prove that the subcontractor created the dangerous condition by removing the plywood covering from the roof opening or covering the opening with styrofoam and the accident did not occur in a common work area. *Mino,* 785 S.W.2d at 561.

Our review of the facts in the record lead us to believe that *Mino* is controlling, and Erdman was required to show Condaire and Sachs had responsibility for and control over the area where the accident occurred because there was no substantial evidence that Condaire and Sachs created the dangerous condition.

All parties cite the case of *Williamson v. Cox,* 844 S.W.2d 95 (Mo.App. S.D.1992), which we find instructive, but not controlling. In *Williamson,* the defendant sub-contractor's employee had cut an opening in the roof for placement of an air conditioning unit. *Id.* at 97. While in the process of creating a metal curb eighteen inches high to place around the hole, it started to rain, and the general contractor determined that the roof should be covered with plastic. *Id.* Because the roof was being covered with plastic, the defendant subcontractor's employee did not install the metal curb and left the area. *Id.* The plaintiff then fell through the opening covered by the plastic. *Id.* In deciding that *Mino* did not apply, the *Williamson* court looked to the evidence to determine whether the defendant caused the dangerous condition. *Id.* The court in *Williamson* found that the undisputed evidence showed that the defendant subcontractor created the dangerous condition by cutting the hole and allowing it to be covered with plastic without any protection for those moving upon the plastic. *Id.* The *Williamson* court further found that although the defendant subcontractor's employee was required to relinquish the area around the opening to the control of the general contractor, there was a basis for the jury to find that before he left the area he should have taken steps to cover, barricade, or warn of the danger. *Id.* at 97–98.

Here, unlike the plaintiffs in *Williamson* and *Killian,* there is no substantial evidence that Condaire and Sachs created the dangerous condition. The evidence shows the opening through which Erdman fell was pre-formed when the concrete was poured, including the four-inch kick plate surrounding the opening, and Condaire and Sachs did not create the opening. When the accident occurred, Condaire and Sachs's work on the load cell was substantially complete, and the last time they worked in the area was on June 23, 1998, some twenty-three days prior to Erdman's accident. Moreover, all employees at the work site had access to the room where the accident occurred and the load cell areas, and there were several trades working in the room on a daily basis, along with their equipment and supplies. Plaintiffs' own witness, Fru Con's superintendent, William Leveritt, testified that during the twenty-three days, Fru–Con employees in-

spected the load cell openings every morning and evening. On each occasion, it was reported that the cover was in place. On the night before Erdman's accident, William Welch, Fru–Con's employee responsible for safety, inspected the reactor room containing the vessel and did not notice an uncovered load cell opening or see any covers lying about the room. The same night, William Leveritt verified that the cover was in place. At trial, William Leveritt's uncontradicted testimony was that on the morning of the accident, William Leveritt again checked this particular opening and confirmed that the cover was in place. We reiterate that in this situation Erdman is bound by William Leveritt's testimony because William Leveritt was Erdman's own witness. *See Simpson,* 36 S.W.3d at 776; *Eidson,* 863 S.W.2d at 626. Furthermore, Fru–Con was responsible for placing the tarps over the vessels, and it was aware that the tarps often slide down and overlap the plywood covers and kick plates. On the date of the accident, Erdman had to do a "high step" in order to keep from tripping over the tarp that had slid down the vessel and onto the floor. After reviewing the evidence, we cannot say there is evidence to show Condaire and Sachs created the dangerous condition. Thus, Erdman was required to show Condaire and Sachs had responsibility for and control over the area where the accident occurred

We next must determine whether Erdman made a submissible case. Facts may be proved by circumstantial evidence. However, the circumstances proven must be such that the facts necessary to support a verdict may be inferred and reasonably follow the verdict, and that the evidence should have a tendency to exclude every other reasonable conclusion. *Steward v. Goetz,* 945 S.W.2d 520, 528 (Mo.App. E.D.1997). Thus, a submissible case is not made if it depends on evidence that supports two inconsistent and contradictory factual inferences as to ultimate facts. *Id.*

Erdman presented evidence that Condaire's and Sachs's employees were the only employees that worked in the load cell opening and those employees were responsible for making the area safe. Erdman also presented evidence that there was no reason for any other worker besides Condaire and Sachs employees to work in the load cell openings and that other subcontractors do not perform other trades' work or handle their equipment. Erdman's theory was that employees of Condaire and Sachs returned to the area and removed the wooden covering because no other contractor's employees had authority to enter the opening.

Erdman's circumstantial evidence was not sufficient to exclude all other reasonable hypotheses. While Condaire and Sachs were the only subcontractors who work directly in the load cell areas, there was no evidence presented that Condaire and Sachs had responsibility for and control over the load cell area when the accident occurred. Condaire and Sachs had moved on to other projects within the Sigma plant. Erdman presented evidence that Fru–Con had conducted a safety inspection the morning of the accident and Fru–Con superintendent William Leveritt's uncontradicted testimony was that the wooden cover was in place. There was no evidence that Condaire or Sachs employees were in the reactor room on the day of the accident or were present at the time of the accident. Neither Condaire nor Sachs had any control over Erdman or his duties. Because Erdman failed to produce evidence that Condaire and Sachs had responsibility and control over the area where Erdman was injured, we cannot say Erdman made a submissible case.

■ No substantial evidence supports the submission of the case to the jury because there is not substantial evidence to show Condaire and Sachs had responsibility for and control of the area where Erdman was injured. If a plaintiff fails to make a submissible case, the verdict must be reversed and the cause remanded for entry of a judgment notwithstanding the verdict. *See PJ's Concrete Const., Inc. v. Gust,* 983 S.W.2d 640, 642 (Mo.App. S.D. 1999).

Accordingly, we reverse the jury verdict in favor of the Erdmans and remand the case to the trial court with instructions to enter a judgment notwithstanding the verdict in favor of Condaire and Sachs. Because Condaire and Sachs's first point is dispositive, we need not address the remaining two points.[2]

Reversed and remanded with instructions.

HOFF, J., concurs.

DRAPER, J., dissents.

GEORGE W. DRAPER III, Judge, dissenting:

I respectfully dissent from the majority opinion and find that there was substantial evidence to support the submission of negligence against Condaire and Sachs. While I would agree with the majority's discussion of the holdings in *Killian, Mino,* and *Williamson, supra,* I respectfully disagree with the majority's application of those cases to the instant cause. While I disagree with the majority on this, I would find the trial court committed reversible error in submitting Erdman's verdict directing instruction in that the instruction fails to state a necessary element of his claim for damages. Therefore,

I would reverse and remand this case for a new trial.

Our review of the denial of a motion for directed verdict and a motion for judgment notwithstanding the verdict is essentially the same. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc 2000). A directed verdict or judgment notwithstanding the verdict is appropriate if the plaintiff fails to make a submissible case. *Boyer v. Sinclair & Rush, Inc.,* 67 S.W.3d 627, 632 (Mo.App: E.D.2002). This Court will reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support its decision. *Burns Nat. Lock Installation Co., Inc. v. American Family Mut. Ins. Co.,* 61 S.W.3d 262, 271 (Mo.App. E.D. 2001).

On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary. *Dubinsky v. U.S. Elevator Corp.,* 22 S.W.3d 747, 749 (Mo.App. E.D. 2000). The question whether the evidence in a case is substantial and whether the inferences drawn are reasonable present questions of law. *Mogley v. Fleming,* 11 S.W.3d 740, 747 (Mo.App. E.D.1999). Where reasonable minds can differ on the question before the jury, we do not disturb the jury's verdict. *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998).

The existence of only circumstantial evidence on a material issue does not bar recovery of and by itself. *Resnik v. Blue Cross and Blue Shield of Missouri,* 912 S.W.2d 567, 570 (Mo.App. E.D.1995). A plaintiff may prove essential facts by cir-

---

**2.** We note that with the *Mino* case controlling, the verdict-directing instructions submitted were deficient because the element of control and responsibility over the area at the time of the injury was omitted.

cumstantial evidence so as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred. *Schumacher v. Barker,* 948 S.W.2d 166, 168 (Mo.App. E.D.1997). As with any type of evidence, the circumstantial evidence must be substantial, and it must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. *Resnik,* 912 S.W.2d at 571.

The majority relies on *Mino,* finding it controlling, in that it sets forth the prerequisites an employee must prove in order to find a subcontractor liable for his or her injury on a construction site. In *Mino,* it is important to note that the court was affirming a jury verdict in favor of the subcontractor, based on its own credibility determinations and all of the evidence presented, holding that the defendant-subcontractor owed no duty to the injured plaintiff-subcontractor. Assuming that *Mino* controls, I believe the majority erroneously applied its holding in the instant case.

As per the holding in *Mino,* "the contractor is liable where he [sic] is in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress." *Mino,* 785 S.W.2d at 561. The majority first addresses whether Condaire and Sachs created the dangerous condition. The majority believes there was no substantial evidence that Condaire and Sachs created the dangerous condition because Fru–Con created the opening into which Erdman fell. While the creation of a load cell opening may in and of itself be a dangerous condition, I believe the uncovered, or lack of barricading or warning of the opening, was the dangerous condition in this case.

Erdman presented uncontradicted testimony that each subcontractor possessed an equal responsibility for safety on the site. Prior to beginning work, Condaire and Sachs signed a contract which specifically provided each subcontractor possessed an equal responsibility for safety on the site. Moreover, Fru–Con provided a safety seminar prior to the beginning of the project where each person on the site received specific training about the necessity of replacing any removed floor coverings after finishing work in a particular opening.

Erdman also presented evidence that Condaire and Sachs were the only subcontractors that worked in the load cell openings. This is distinguishable from the *Mino* court's finding that the location of the incident was not in an area of work that was assigned to the defendant-subcontractor. *Mino,* 785 S.W.2d at 561. The present facts are more akin to *Williamson,* where the defendant in that case was actually working on the hole through which plaintiff fell. *Williamson v. Cox,* 844 S.W.2d 95, 97 (Mo.App. S.D.1992). Here it is undisputed that the load cell area was assigned to Condaire and Sachs, and they worked exclusively in that area.

When work began in the area where Erdman ultimately fell, wood floor coverings covered the load cell openings around the vessel. In order to place the load cells and drill the necessary holes in the tank feet, load cell, and I-beam, it was necessary to remove the tarp from the vessel and remove the floor coverings. Despite testimony that other subcontractors worked in the reactor room, no contradictory evidence was presented that any subcontractors, other than Condaire or Sachs, worked in the load cell openings.

In addition, William Leveritt (hereinafter, "Leveritt") testified that the only subcontractors that had authority to work in

the load cell openings were Condaire and Sachs. Leveritt also testified that no other subcontractor had any authority to enter the load cell openings while Condaire and Sachs worked on a different aspect of the project. Leveritt stated there was a distinction between subcontractors having access to the reactor room in general and having access to the load cell openings. One of Sachs's electricians also testified that he knew of no reason that any other subcontractor would work in the load cell openings.

Moreover, Erdman also presented uncontradicted evidence about the industry practice with regard to trades sharing a work area. One of ICS's foremen testified it is the general custom and practice that trades do not tolerate individuals from other trades performing their work or handling their equipment. A reasonable inference from this uncontradicted testimony is that even though other subcontractors had access to the reactor room, no one performed any work in the load cell openings or moved the wood floor coverings in conformance with industry practice.

Erdman presented substantial evidence of Condaire and Sachs safety obligations and training, their exclusive authority to work in the load cell opening, their exclusive work in the opening, and the industry standards with regard to working in another trade's area. All of this evidence supports a reasonable conclusion Condaire and Sachs created the dangerous condition. Thus, Erdman made a submissible case as to the creation of the dangerous condition. Moreover, this provided a basis for the jury to find that before Condaire or Sachs left the area, they should have taken steps to properly cover, barricade, or warn of the danger presented by the load cell opening. *See Williamson,* 844 S.W.2d at 97.

Second, the majority states that the work was substantially complete at the time of the accident, and therefore, the work was no longer in progress. In *Mino,* it was undisputed that the defendant-subcontractor's work was substantially complete at the time of the accident as well. *Mino,* 785 S.W.2d at 559. However, *Mino* can be distinguished in that here the parties disputed whether the work in the load cell openings was substantially complete at the time of the accident. Condaire and Sachs believe the work was substantially complete on June 23, 1998, approximately twenty-three days prior to Erdman's accident.

However, Erdman presented testimony that neither Fru–Con nor Sigma had accepted Condaire's and Sachs's work on the vessel as finished at that time. William Welch, a Fru–Con employee, stated that the vessels were not accepted by Fru–Con nor Sigma as a finished project as of June 23, 1998. Welch testified that on July 16, 1998, the vessel was not operational despite Condaire and Sachs moving on to install other load cells in another room. In addition to working on the next set of load cells, a Sachs electrician testified that on July 27, 1998, he and another electrician returned to the area where Erdman was injured and removed the load cells because there was additional work scheduled for the vessel. Again, this circumstantial evidence provided to the jury was substantial. It established the desired inference with such certainty as to cause it to be the more reasonable and probable conclusion that the work was not substantially complete at the time of the accident, further evidencing Condaire and Sachs's control over the area.

Third, *Mino* requires that Erdman prove Condaire and Sachs had responsibility and control of the area where he was injured. As stated earlier, based upon

circumstantial evidence, it was a reasonable conclusion that Condaire and Sachs had control over the area where Erdman was injured. Despite other subcontractors having access to the reactor room, Leveritt testified that there was a distinction between having access to the room and access to the load cell openings. No one other than Condaire or Sachs performed any work in the load cell openings and no trade had authority to enter the load cell openings after they moved on to work in another area. Finally, and most importantly, Sachs returned to the load cell opening after the accident in order to perform additional work. This is substantial evidence that Condaire and Sachs had responsibility and control over the load cell openings.

While this is a close case, it must be mentioned that on appeal, we do not weigh the evidence, determine credibility of the witnesses, or resolve conflicting factual testimony. *Miller v. Gillespie*, 853 S.W.2d 342, 344 (Mo.App. E.D.1993). Rather, it is the jury who is the sole judge when it comes to credibility of the witnesses, and the resulting weight and value to be given to any witness's testimony. *Roark Motor Lodge Interval Sales Corp. v. Lindner*, 779 S.W.2d 684, 686 (Mo.App. E.D.1989). The jury is in a better position not only to judge the credibility of witnesses directly but also their sincerity and character as well as intangibles that may not be reflected in the record. *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65 (Mo.App. E.D.1987). It may believe or disbelieve any part of that testimony. *Roark*, 779 S.W.2d at 686.

The difficulty for appellate courts and specifically here, is that we do not have the benefit of knowing who the jury believed or disbelieved, and we cannot make credibility determinations based on a cold record. However, we do know the jury entered judgment in Erdman's favor and where reasonable minds can differ on the question before the jury, we will not disturb the jury's verdict. *Seitz*, 959 S.W.2d at 461. In this case, I believe reasonable minds could differ on the question of subcontractor liability before the jury, and I would find Erdman made a submissible case of negligence against Condaire and Sachs.

Condaire and Sachs's second points on appeal claim the trial court committed prejudicial and reversible error in submitting Erdman's verdict directing instruction. Condaire and Sachs argue that Instruction No. 7 did not submit an essential element of Erdman's claim.

We review a trial court's refusal to submit an instruction for abuse of discretion. *Quinn v. Lenau*, 996 S.W.2d 564, 568 (Mo. App. E.D.1999). In considering the propriety of a profered instruction, we review the evidence in the light most favorable to the submission of the instruction, keeping in mind a party is entitled to an instruction on any theory supported by the evidence. *Kauzlarich v. Atchison, Topeka, and Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc 1995); *Shop 'N Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851, 862 (Mo.App. E.D.1996). "To be charged to the jury, an issue submitted in an instruction 'must be supported by substantial evidence from which the jury reasonably could find [the] issue.'" *Kauzlarich*, 910 S.W.2d at 258 (*quoting Egelhoff v. Holt*, 875 S.W.2d 543, 548 (Mo. banc 1994)).

We will not reverse a verdict due to instructional error, including the refusal to give an instruction, unless the error was prejudicial. *Higby v. Wein*, 996 S.W.2d 95, 97 (Mo.App. E.D.1999). To establish reversible error, the complaining party must show that, under all the evidence, the instruction was a misdirection to the jury resulting in prejudicial error. *Hackman v.*

*Kindrick,* 882 S.W.2d 157, 159 (Mo.App. E.D.1994)

The trial court submitted the following verdict directing instruction tendered by Erdman:

Your verdict must be for plaintiff Todd J. Erdman if you believe:

First, Condaire, Inc. removed the wooden floor penetration cover from the load cell hole and failed to replace it and as a result the floor was not reasonably safe for those working in the area, or

defendant Condaire, Inc. failed to barricade the open load cell hole and as a result the floor was not reasonably safe for those working in the area, and

Second, defendant Condaire, Inc. failed to use ordinary care to remedy or warn of such unsafe condition, and

Third, as a direct result of such failure, Todd J. Erdman sustained damage.

Condaire and Sachs claim the submission of this instruction constituted reversible and prejudicial error because it misled and misdirected the jury in what they claim is a necessary element of Erdman's claim, namely, that Condaire and Sachs were in control of and had responsibility for the area where Erdman was injured. I agree.

*Mino* addresses this contention and is controlling. In *Mino,* the Western District explicitly approved the following jury instruction which was submitted to the jury on the issue of subcontractor liability:

In your verdict you must assess a percentage of fault to defendant Porter Roofing Company, whether or not plaintiff Stephen Mino was partly at fault, if you believe:

First, Porter Roofing Company had control and responsibility of the curb and the area within the curb on the roof of the Fireworks building; and

Second, either:

Defendant, Porter Roofing Company failed to cover or recover the hole in the Fireworks building with a material that could bear the weight of a man; or

Defendant Porter Roofing Company failed to warn that the hole in the roof of the Fireworks building was covered with a material that could not bear the weight of a man; and

Third, defendant, Porter Roofing Company in any one or more of the respects submitted in paragraph Second was thereby negligent; and

Fourth, as a direct result of such negligence, plaintiff Stephen Mino sustained damage.

*Mino,* 785 S.W.2d at 560.

The *Mino* court rejected the plaintiff's argument that he should not have been taxed with the burden of showing the element of control and responsibility over the construction area where he was injured. *Id.* The court held that no case authority existed to extend a subcontractor's liability to dangerous conditions on the job site that were not under its control or that did not constitute part of the work area assigned to it. *Id.*

The jury instructions tendered by Condaire and Sachs, which were rejected by the trial court, tracked the language approved by the court in *Mino.* As I discussed earlier, control is an element of Erdman's case, on which I believe he submitted substantial evidence. The verdict directing instruction tendered to the jury did not submit this issue which prejudiced Condaire and Sachs. As such, I would find the trial court committed reversible and prejudicial error in instructing the jury; therefore, I would reverse and remand for a new trial. Since I find this

point dispositive, I will not address the remaining point.