KEN CUCCHI CONSTRUCTION, INC., d/b/a Cucchi Construction, Inc., Appellant,

v.

Jerry R. O'KEEFE and Bernice M. O'Keefe, Respondents.

No. 72465.

Missouri Court of Appeals, Eastern District, Division Three.

July 14, 1998.

**522**

Bernard A. Reinert, John W. Rourke, St. Louis, for appellant.

John L. Rooney, St. Louis, for respondents.

AHRENS, Presiding Judge.

I. Facts

Plaintiff, Cucchi Construction, filed a five-count petition against defendants, Jerry and Bernice O'Keefe, arising out of the defendants' refusal to pay plaintiff the balance on a contract for the construction of the defendants' house. Defendants filed a counterclaim, alleging that plaintiff breached its obligations under the contract. The trial court

entered judgment in favor of defendants on both plaintiff's claim and their counter-claim and ordered plaintiff to pay defendants $5,155.19. Plaintiff appeals from the trial court's judgment. We affirm in part, and reverse in part and remand.

Viewing the record in the light most favorable to the trial court's judgment, the following evidence was adduced at trial. A fire destroyed defendants' home in September 1993. In late November 1993 plaintiff agreed to rebuild defendants' home in exchange for $105,000. The contract specified that the defendants would pay plaintiff $35,000 at the inception of construction, $35,000 after plaintiff put on the roof, $30,000 after plaintiff completed construction and $5,000 after plaintiff completed a "walk-thru".

Defendants timely made the first two installment payments of $35,000. Plaintiff then sent defendants an invoice in September 1994 after it had completed construction of the residence. In this invoice, plaintiff credited defendants' account in the amount of $10,472 for their purchase of materials from subcontractors that plaintiff was responsible for. Also, plaintiff charged defendants $3,911.23 for additional work that plaintiff alleged the defendants had ordered. Thus, plaintiff's invoice showed that defendants owed plaintiff a balance of $28,439.23 on the contract.

The defendants refused to pay any additional amount above the $70,000 they had already paid, asserting that the quality of plaintiff's work was unacceptable and that plaintiff had not conducted the walk-thru. Plaintiff, in response to defendants' refusal to pay the balance due on the contract, filed a five-count petition against defendants in Jefferson County Circuit Court. Plaintiff contended in Count I that the defendants breached the contract by failing to pay the remaining balance on the contract. In Counts II and III plaintiff asserted that it was entitled to the balance on the contract under either a promissory estoppel or quantum meruit theory. Plaintiff asserted in Counts IV and V that it was entitled to either a mechanic's lien or an equitable lien on defendants' property to secure payment of the debt. Plaintiff also requested that the court order defendants to pay its attorney's fees, a service charge and interest.

Defendants filed a counter-claim against plaintiff, asserting that plaintiff breached the contract by failing to perform its work in a workmanlike manner and that plaintiff failed to provide for some of the materials required in the contract. In a bench-tried case, the trial court entered judgment against plaintiff on all five of its counts and in favor of defendants on their counter-claim.

In calculating defendants' damages, the trial court began with the assumption that plaintiff was entitled to the $105,000 contract price. The trial court then · deducted the $70,000 the defendants had already remitted to plaintiff. The trial court also subtracted a $6,200 payment the defendants' insurance company paid to plaintiff for debris removal prior to the beginning of construction. The trial court further deducted $5,000 off the contract price because plaintiff had not conducted the walk-thru as required by the contract. These subtractions left a balance of $23,800 on the contract price.

The trial court then credited defendants for the cost of replacing plaintiff's defective workmanship and the amount of money defendants spent on purchasing materials that plaintiff was required to purchase under the contract. The trial court found defendants' cost to repair or replace plaintiff's defective workmanship was $15,450. The trial court also determined that the defendants purchased materials in the amount of $13,505.19 that plaintiff was required to provide. Accordingly, the trial court calculated defendants' damages to be $28,955.19. Subtracting these damages from the balance remaining on the contract price, the trial court ruled that the defendants were entitled to $5,155.19. The trial court denied plaintiff's motion for a new trial. This appeal follows.

## II. Analysis

In a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.

banc 1976). Further, in determining whether there is sufficient evidence to support the trial court's judgment, we will review the evidence in the light most favorable to the judgment. *Mason v. Mason*, 873 S.W.2d 631, 633–34 (Mo.App.1994). Also, the trial court, as the trier of fact, determines the credibility of witnesses and may believe or disbelieve all or a part of any witnesses' testimony. Rule 73.01(c)(2); *Gee v. Payne*, 939 S.W.2d 383, 388 (Mo.App.1997).

### A. Plaintiff's Substantial Performance

■■■ Plaintiff asserts sixteen points of error on appeal. However, many of plaintiff's points are derivative of one another and can be reduced to four assertions of error. Plaintiff first asserts that the trial court erred in finding that it breached the contract with defendants. Plaintiff argues that although there may have been slight defects in its work, it did substantially comply with its contractual obligations. Even if a contractor does not strictly comply with its obligations under the contract, it may recover on the contract if it substantially complied with its requirements. *Daugherty v. Bruce Realty & Development, Inc.*, 892 S.W.2d 332, 335 (Mo. App.1995). When a contractor has substantially complied with its obligations under the contract, it is entitled to recover the contract price minus the sums necessary to correct any defects. *Sides Construction Co. v. Arcadia Valley R–II School Dist.*, 565 S.W.2d 761, 772 (Mo.App.1978).

Here, the trial court found that plaintiff did not substantially perform its obligations under the contract and therefore could not recover on its breach of contract claim. However, the trial court then proceeded to calculate defendants' damages from the perspective that plaintiff was entitled to the $105,000 contract price. Thus, the manner in

which the trial court calculated defendants' damages was identical to the manner it would have calculated these damages if it had found that plaintiff substantially complied with its contractual obligations.[1] Therefore, any error the trial court may have committed in finding that plaintiff did not substantially comply with its contractual obligations did not prejudice plaintiff and does not warrant reversal.[2] Rule 84.13(b).

### B. The Trial Court's Calculation of Damages

Plaintiff next argues that the trial court incorrectly calculated both the amount defendants owed it under the contract and the credits defendants were entitled to offset against that amount. As we illustrated above, the trial court calculated that defendants owed plaintiff $23,800 under the contract and that defendants were damaged in the amount of $28,955.19 by plaintiff's failures to properly execute its obligations under the contract. Plaintiff contends the trial court erred in making these calculations in the following respects.

### 1. Value of Extra Work done by Plaintiff

■■■ Plaintiff also contends that the trial court should have increased the amount that defendants owed it under the contract by $2,411.23 for the value of the extra services and materials it provided defendants. The trial court held that plaintiff was not entitled to the value of these services and material because the work orders were not in writing as required by the contract.[3]

■■■ When a contract requires a contractor to obtain a written work order before beginning any additional work, the contractor may not recover for the extra work unless it ·

---

1. Plaintiff also asserts on appeal that the trial court erred in not awarding it the contract price under either its quantum meruit or promissory estoppel claim. However, given the fact that the trial court calculated defendants' damages as if plaintiff was entitled to the contract price, this assertion of error is moot.

2. Defendants do not complain on appeal that the trial court erred in calculating its damages from the perspective that plaintiff was entitled to the contract price despite the fact that it found that

plaintiff had not substantially complied with its contractual obligations. Therefore, we need not address that issue.

3. The trial court did adjust the contract price upward by $1,500 for one additional work order that plaintiff completed because the work order was signed by both parties as required in the contract. Neither party claims that the trial court erred in making this $1,500 adjustment.

obtains either the written order or a waiver by the landowner. *Robinson v. Powers,* 777 S.W.2d 675, 680 (Mo.App.1989). A contractor may show that the landowner waived the requirement of a written work order by presenting evidence that the parties orally agreed upon the extras. *Winn–Senter Construction Co. v. Katie Franks, Inc.,* 816 S.W.2d 943, 945 (Mo.App.1991).

Here, the contract between defendants and plaintiff required plaintiff to obtain a written work order and defendants' signatures before doing the extra work. Plaintiff failed to obtain such a work order. Plaintiff's vice-president, Joe Cucchi, did testify that defendants consented to the additional work and agreed to pay for it. However, Mrs. O'Keefe testified that neither she nor her husband consented to the additional work that was not in a written work order. Viewing this record in the light most favorable to the trial court's judgment, there is substantial evidence to support the trial court's finding that the plaintiff was not entitled to the $2,411.23 for the additional work.

### 2. *The $6,200 Payment for Debris Removal*

■ Plaintiff next argues that the trial court erred in crediting defendants for the $6,200 payment defendants' insurance company made to plaintiff for debris removal. Plaintiff contends that substantial evidence does not support the trial court's finding that the $6,200 payment for debris removal was part of the $105,000 contract price. We agree.

Mrs. O'Keefe did testify that on direct examination that plaintiff agreed that the $6,200 for debris removal was part of the $105,000 contract price. However, on cross-examination, Mrs. O'Keefe conceded that the written proposal dated November 24, 1993 governed the terms of the agreement between the O'Keefes and Cucchi.

The November 24 agreement called for defendants to pay $35,000 at the inception of the construction, $35,000 after plaintiff completed the roof, $30,000 when plaintiff completed construction and $5,000 after plaintiff completed the walk-thru. Nowhere in the agreement is the $6,200 payment to plaintiff mentioned as part of the contract price.

Also, the agreement set out in detail plaintiff's obligations under the contract and those obligations did not include debris removal. Further, Mrs. O'Keefe admitted on cross-examination that she did not know if the $6,200 payment was actually part of the $105,000 contract price or was part of a separate agreement for debris removal.

Even viewing this record in the light most favorable to the trial court's judgment, substantial evidence does not support its finding that the $6,200 payment for debris removal was part of the $105,000 contract price. Therefore, that portion of the trial court's judgment must be reversed.

### 3. *Defendants' Direct Payments to Subcontractors*

■ The trial court credited defendants in the amount of $13,505.19 for their purchasing materials directly from subcontractors that plaintiff was required to purchase in the contract. This amount included $7,526.19 for carpeting, $4,4187 for a H.V.A.C. system and $1,792 for a handrailing. Plaintiff first contends that the trial court erred in crediting defendants for any of these purchases. Plaintiff argues that the parties amended their agreement once it began construction to allow defendants to directly purchase higher quality materials than those specified in the original agreement in exchange for plaintiff crediting their account for the value of the original materials. However, Mrs. O'Keefe testified that the parties never agreed to such a modification. Thus, viewing this record in the light most favorable to the trial court's judgment, there was substantial evidence to support a finding that defendants were entitled to a credit of $13,505.19 for the amount of the purchases they made directly from subcontractors.

■ Plaintiff further argues that it had already credited defendants' account in the amount of $5,000 for carpeting, $4,062 for a H.V.A.C. system and $1,200 for a handrail in its bill to defendants. Therefore, plaintiff contends, the trial court double credited defendants for these items. Plaintiff did credit defendants' account for these purchases in the bill that it sent defendants. However,

the trial court did not utilize this bill in its calculation of damages. Rather, the trial court simply began its calculation by starting from the $105,000 contract price and then subtracted the defendants' payments and the cost to repair or replace plaintiff's defective work from that price. Therefore, the trial court did not double credit defendants for these purchases when it deducted them from the contract price.

### 4. Walk-thru

The trial court deducted $5,000 from the balance of the amount defendants owed to plaintiff on the contract because plaintiff failed to execute a walk-thru. The written agreement expressly states that defendants were obligated to pay plaintiff the last $5,000 on the contract after plaintiff conducted a final walk-thru. Plaintiff does not dispute that it failed to conduct the walk-thru. Rather, Cucchi's foreperson on the job, Dave Hausman, testified that Mr. O'Keefe prohibited his crew from completing the walk-thru by threatening to shoot them. Also, Cucchi's Vice President, Joe Cucchi, testified that he decided not to perform any further work on the project because Mr. O'Keefe notified him that he was suffering financial problems and could not make any additional payments.

It is true that a party to a contract who prevents or hinders the other party from executing its obligations under the contract cannot rely on the other party's non-performance to escape its obligations under the contract. *Hillis v. Blanchard*, 433 S.W.2d 276, 279 (Mo. banc 1968). However, as we illustrated above, the trial court, as the trier of fact, was entitled to disbelieve the testimony of any witness. Thus, the trial court was entitled to disbelieve the testimony of both Joe Cucchi and Dave Hausman and simply look at the terms of the contract. Therefore, viewing the evidence in the light most favorable to the trial court's judgment, there was substantial evidence to support the trial court's finding that plaintiff was not entitled to the $5,000 because of its failure to conduct the walk-thru.

### 5. Electrical Problems

The trial court credited defendants $5,000 for the cost of repairing some of the electrical work done by plaintiff. Plaintiff expressly promised in the agreement that it would complete all of its work in a workmanlike manner. An electrician, Tom Reiman, testified that some of the electrical work done by plaintiff pursuant to the contract was not completed in a workmanlike manner. Thus, there was substantial evidence to support the trial court's finding that plaintiff breached its express promise to complete its work in a workmanlike manner with respect to some of its electrical work.

Although there is substantial evidence to support the trial court's finding that plaintiff failed to complete some of the electrical work in a workmanlike manner, substantial evidence does not support the trial court's finding that defendants were damaged in the amount of $5,000 because of this breach. Mr. Reiman testified that defendants paid him $5,000 for the electrical work that he completed in their home. However, Mrs. O'Keefe admitted on redirect examination that some of the $5,000 that she and her husband paid Mr. Reiman was for electrical work unrelated to their contract with plaintiff. Therefore, the trial court's determination that plaintiff's faulty electrical work damaged defendants in the amount of $5,000 is not supported by substantial evidence. Accordingly, this portion of the trial court's judgment must be reversed and remanded with instructions to calculate defendants' damages by determining only defendants' expense of repairing plaintiff's defective work.

### 6. Anchoring the Deck Piers

The trial court credited defendants $450 for the cost of securing the posts of the deck of the house to concrete piers. The contract required plaintiff to anchor the deck posts to concrete piers. A general contractor, Robert Parton, testified at trial that plaintiff failed to properly anchor the posts to the concrete piers and that the posts were therefore unstable. Mr. Parton also testified that the cost of securing the posts to the concrete piers would be $450. Therefore, there was substantial evidence to support the

trial court's finding that defendants were entitled to a credit of $450 for securing the posts to the concrete piers.

### 7. Replacing the Roof

■ The trial court credited defendants $2,500 for the cost of replacing the roof. The contract required plaintiff to install two layers of felt underneath the roofing material. Plaintiff does not dispute that it failed to install the felt as required by the contract. Rather, plaintiff's foreperson, Mr. Hausman, testified that the O'Keefes agreed not to require the installation of the felt in exchange for plaintiff crediting their account in the amount of $210, which was the value of the felt.

The trial court as the finder of fact, was free to disbelieve Mr. Hausman's testimony, even if it was uncontroverted. *Green v. Hastings*, 621 S.W.2d 549, 550 (Mo.App.1981). Thus, the trial court was free to disbelieve Mr. Hausman's testimony and find that there was no agreement to modify the contract regarding the installation of the felt. Accordingly, viewing this record in the light most favorable to the trial court's judgment, there is substantial evidence to support its finding that plaintiff's failure to install the roofing felt as required by the contract was a breach of the agreement.

■ Plaintiff further contends that even if its failure to install the roofing felt was a breach of the agreement, the proper measure of damages should have been the diminution of the value of the roof without the felt rather than the cost of replacing the roof. The general rule in calculating damages for a breach of contract is that the non-breaching party is entitled to the cost of repairing or replacing the defective work. *County Asphalt Co. v. 1861 Group, Ltd.*, 908 S.W.2d 184, 186 (Mo.App.1995). However, if the cost of repair or replacement would constitute an economic waste, then the proper measure of damages is the diminished value of the property because of the defective work. *Id.*

■ The repair or replacement of the defective property is economic waste if the cost of repair or replacement is dispropor-

tionate to the diminution in the value of the property. *Id.* Once the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property. *Id.* Accordingly, if the contractor fails to present any evidence on the diminution of value of the property it fails to meet its burden of production. *Id.* at 187.

Here, defendants presented evidence that the cost of replacing the defective roof would be $2,500. Thus, the burden shifted to the plaintiff to produce evidence showing that this amount was disproportionate to the diminution in the value of the roof without the felt. However, plaintiff failed to produce any evidence on the diminution of the value of the roof without the felt. Thus, plaintiff failed to meet its burden of production in demonstrating that the replacement of the roof constituted economic waste. Therefore, the trial court did not err in crediting defendants $2,500 for the cost of replacing the defective roof.

### 8. Replacing the Siding

■ The trial court credited defendants $7,500 for the cost of replacing the siding of the home. Mr. Parton testified that plaintiff did not install the siding in a workmanlike fashion in that the siding was nailed too tightly to the house, which caused the siding to bulge. Mr. Parton also testified that cost of replacing the siding would be $7,500. Therefore, there was sufficient evidence to support the trial court's finding that plaintiff breached the agreement by not installing the siding in a workmanlike manner and that this breach damaged defendants in the amount of $7,500.

Plaintiff also asserts that the replacement of the siding constitutes an economic waste. However, as with its previous point, plaintiff failed to present any evidence on the diminution in value of the siding. Therefore, the plaintiff failed to meets its burden of producing evidence demonstrating that the replacement of the siding constituted economic waste. The trial court, therefore, did not err

in crediting defendants $7,500 for the cost of replacing the siding.

### 9. Prejudgment Interest

Plaintiff contends that it is entitled to prejudgment interest under section 408.020 RSMo. (1994). Under the statute, a party is entitled to prejudgment interest if the amount is liquidated or readily ascertainable by reference to recognized standards. *St. John's Bank & Trust Co. v. Intag, Inc.,* 938 S.W.2d 627, 630 (Mo.App.1997). Therefore, prejudgment interest is not available under the statute if the measure of damages is disputed. *Id.*

In the instant case, as we illustrated above, plaintiff itself disputed the measure of damages with respect to the replacement of the roof and siding. Plaintiff unsuccessfully asserted that the proper measure of damages should have been the diminution of value of the roof and siding while defendants contended replacement cost was the proper measure of damages. Because the parties disputed the measure of damages, plaintiff was not entitled to prejudgment interest under section 408.020.

### 10. Plaintiff's Attorney's Fees and Service Charges.

Plaintiff finally contends that under the contract, it is entitled to its attorney's fees and a service charge totaling $37,364.29. It is true that if a contract provides for the payment of attorney's fees and a service charge, the trial court must award those fees. *Schnucks Carrollton Corp. v. Bridgeton Health & Fitness, Inc.,* 884 S.W.2d 733, 739 (Mo.App.1994). However, even if the contract is silent on the issue, a party may only recover its fees under a contract provision if it is a prevailing party. *Porter v. Lake Waukomis Assn.,* 687 S.W.2d 237, 239–40 (Mo.App.1985). A prevailing party is the party prevailing on the main issue in dispute, even though not necessarily to the extent of its original contention. *Birdsong v. Bydalek,* 953 S.W.2d 103, 124 (Mo.App.1997).

Here, plaintiff's primary contention is that it was entitled to the additional $35,000 that defendants still owed on the contract and an additional $2,411.23 for the value of extra services and material it provided to defendants. As illustrated above, plaintiff is not entitled to collect $5,000 on the contract because it failed to complete the walk-thru and $2,411.23 for the extra services and materials because the additional work orders were not in writing. Also, defendants were entitled to offset the contract price by $13,505.19 for the value of materials they purchased directly from subcontractors and at least $10,450 for the cost of repairing plaintiff's defective work. We conclude that plaintiff was not the prevailing party and therefore is not entitled to either its attorney's fees or the service charge under the contract.

### C. Credibility of Witnesses

Plaintiff also contends that the trial court erred in entering judgment in favor of defendants because defendants' witnesses were not credible. However, as we stated above, the trial court, as finder of fact, is the sole judge of the credibility of witnesses and is free to believe or disbelieve the testimony of any witnesses. *Gee v. Payne,* 939 S.W.2d 383, 387 (Mo.App.1997); Rule 73.01(c)(2). Therefore, plaintiff's argument on this point is baseless and must fail.

### D. Mechanic's Lien

Plaintiff also contends that the trial court erred in entering judgment against it on both its statutory and equitable mechanic's lien claims. The trial court entered judgment against plaintiff on these two counts because it found that defendants owed no money on the contract. However, given our disposition of plaintiff's claims on appeal relating to the trial court's calculation of damages, defendants do owe on the contract. Therefore, we must remand this portion of the trial court's judgment with instructions to determine whether plaintiff is entitled to either a statutory or equitable mechanic's lien on defendants' property given the fact that defendants do owe on the contract.

### III. Conclusion

The portion of the trial court's judgment denying plaintiff's request for attorney's fees, service charges, prejudgment interest and

the value of the extra work not agreed upon in writing is affirmed. We also affirm the portion of the trial court's judgment crediting defendants in the amount of $7,500 for the cost of replacing the siding, $2,500 for the cost of replacing the roof, $5,000 for plaintiff's failure to execute a walk-thru, $450 for anchoring the deck posts to the concrete piers and $13,505.19 for their purchases from the sub-contractors. We reverse the portion of the trial court's judgment that credited defendants for the $6,200 payment for debris removal.

We reverse and remand on the issue of defendants' damages with respect to plaintiff's defective electrical work with instructions to consider only the amount defendants expended to correct plaintiff's faulty electrical work. Finally, we remand the issue of plaintiff's request for either a statutory or equitable mechanic's lien on defendants' property. Accordingly, the following table summarizes the proper measure of how much defendants owe plaintiff on the contract:

| | |
|---|---|
| Contract Price | $105,000.00 |
| Additional Work | +$ 1,500.00 |
| Defendants' Payments | −$ 70,000.00 |
| Lack of Walk–Thru | −$ 5,000.00 |
| Cost of Repairs | −$ 10,450.00 |
| Cost of Items Purchased from subcontractors | −$ 13,505.19 |
| Total | $ 7,544.81 |

The trial court must then deduct from this total the defendants' damages that it calculates on remand resulting from plaintiff's faulty electrical work.

The judgment of the trial court is affirmed in part, and reversed in part and remanded with instructions.[4]

CRANDALL and KAROHL, JJ., concur.

---

[4]. We note that the trial court adopted defendants' proposed findings of fact, conclusions of law and judgment verbatim. On remand, we remind the trial court that before it adopts an advocate's proposed order, it must first carefully scrutinize the order because of the advocate's

propensity to recite the evidence and the applicable law in a non-objective manner. *Massman Construction Co. v. Missouri Highway & Transportation Commission,* 914 S.W.2d 801, 804 (Mo. banc 1996).