Melvin DUBINSKY, et al., Respondents,

v.

UNITED STATES ELEVATOR CORP., Appellant.

No. ED 76502.

Missouri Court of Appeals, Eastern District, Division One.

July 18, 2000.

748

Mark A. Smith, Joseph H. Guffey, Husch & Eppenberger, LLC, St. Louis, for appellant.

Gregory H. Wolk, Berg Borgmann Wilson & Wolk, LLC, St. Louis, for respondent.

PAUL J. SIMON, Judge.

Defendant Thyssen Dover Elevator Corporation, formerly known as United States Elevator Corporation, appeals from a judgment entered upon a jury verdict in favor of plaintiffs, Melvin Dubinsky, Daniel Siegal, Alan Pervil and Henry Dubinsky, Trustee of Trust under Will of Harold Dubinski, d/b/a Chemical Building Partnership.

On appeal, defendant contends that the trial court erred in denying its motions for: (1) directed verdict and/or judgment notwithstanding the verdict (JNOV), because plaintiffs failed to establish damages, in that they admittedly suffered no diminution in value; (2) new trial because the trial court improperly gave MAI 4.01 as the damages jury instruction, in that MAI 4.02 is the proper instruction where only property damage is at issue; (3) new trial because the jury verdict was excessive in that plaintiffs were improperly awarded damages based on a faulty jury instruction and based on the cost of replacing three entire elevator hoist machines. We affirm in part, reverse in part and remand for a new trial on damages only.

On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary. *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998). In reviewing the trial court's denial of motions for directed verdict and JNOV, we determine whether the plaintiff has made a submissible case. *Id.* We will reverse a judgment based on a jury verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion; thus where reasonable minds can differ on the question before the jury, we do not disturb the jury's verdict. *Id.*

The record, viewed in the light most favorable to the jury verdict, reveals that the Chemical Building is located on the northeast corner of Eighth and Olive. The building was built in 1896, with an addition built in 1898 and is on the National Register of Historic Places. Plaintiffs purchased the building in 1974 and their offices are located on the 16th floor.

In 1986, they decided to renovate the building and replace the six original manually operated elevators with three new ones. Plaintiffs entered into a five year contract with defendant, whereby defendant was to replace the original six elevators with three new ones and to maintain, repair and replace, as warranted, in exchange for payments of $1075.00 per month. Defendant had the right to adjust the contract price each year. The new elevators contained hoist machines manufactured by Kaneko, a Japanese company with no offices or phone numbers in the United States.

The contract was performed for the term and renewed again for a five year term up to and including June 4, 1996. In 1996, the contract price to maintain the elevators had escalated to $1700.00 per month and plaintiffs decided to determine whether other elevator maintenance companies could maintain the elevators at lower cost. Before giving notice of termi-

nation of the contract, plaintiffs contracted with Joseph Stabler, an elevator consultant, to determine the condition of the elevators. Stabler conducted an inspection and reported to plaintiffs that the ring gears on all three elevators were excessively "pitted."

"Pitting" means that the surface of the gear develops small cavities or "pock marks." A ring gear is a circular bronze gear that intermeshes with the worm gear. The ring gear, worm gear, along with the hoist motor, gear case, drive sheave, bed plate, drive shaft, brake pulley and lubricant reservoir make up the hoist machine, which raises and lowers the elevator.

Plaintiffs and defendant discussed Stabler's report and the condition of the elevators and defendant agreed to perform certain repairs. However, the parties disagreed about the condition of the ring gears. After performing an independent inspection of the ring gears, Thomas Peterson, defendant's vice president, wrote a letter to plaintiffs, dated May 23, 1996, explaining that although it had located signs of minor isolated pitting in some of the ring gears, defendant found no evidence of severe pitting and that "useful life still remains on the ring gear and related components. Defendant refused to replace any of the ring or worm gears, and thereafter plaintiffs cancelled the contract in 1996, with the last day for which defendant was responsible for maintaining the elevators as June 4, 1996. Plaintiffs retained Archway Elevator, an elevator maintenance company, to maintain the elevators, however this contract excluded repair of the ring gear.

In April 1998, nearly 2 years after defendant's contract to maintain the elevators had been terminated, plaintiffs replaced the entire hoist machine in Elevator No. 1. As of the date of trial, April 1999, plaintiffs had not replaced any of the components on Elevators Nos. 2 and 3.

Plaintiffs filed a two count petition in the Circuit Court for the City of St. Louis, Missouri in November 1996, seeking damages in the amount of $60,480.00 and costs, attorneys fees and "further relief as is just in the premises." In their first count, plaintiffs alleged that Defendant failed and neglected to properly inspect, maintain, repair and replace the various components of the three elevators in the Chemical Building, allowing the components to become worn, defective and dangerous, breaching an agreement between the parties in which defendant agreed to maintain, repair and replace the elevator system. In the second count, they alleged that defendant breached an implied warranty that the work to be performed under the agreement would be performed in a skillful and workmanlike manner, free from defects in materials and workmanship.

At trial, Alan Pervil, one of the individual plaintiffs and owners of the building, testified that he was advised in 1996 by Archway Elevator that they could continue to use the elevators at that time because Archway Elevator was taking extra special precautions, such as observing the elevator four to five times per month, rather than the usual once or twice a month servicing. Elevator No. 1 was replaced in 1998 based on the advice of Archway Elevator that the elevator was dangerous and required immediate replacement. Elevators Nos. 2 and 3 remained in place but with the same precautions. Elevator No. 3 would likely be the next to be replaced because of its level of deterioration. He testified that the cost of replacing Elevator No. 1 was $18,383.00 and estimated, based on the time value of money, that the cost of replacing elevator No. 3, would be about $23,000 to $24,000 and elevator 2, which was smaller, would be about $21,000.

Jerry Follen of Archway Elevator testified on behalf of plaintiff that he was engaged in maintenance of Elevator No. 1 from 1996 to 1998, when he advised that the hoist machine needed to be replaced because of the condition of the ring gear. It was his opinion that it would be more economical to replace the entire hoist ma-

chine than to try to replace the ring gear. He was unfamiliar with Kaneko and recommended that the machine be replaced by Hollister–Whitney, a company with which he had previously conducted business. Archway Elevator replaced the ring gear in Elevator No. 1, charging plaintiff $18,383.00, with $8,500.50 representing labor costs and $9,882.50 for materials. Elevators Nos. 2 and 3 would have to be replaced in the same manner when they were ready for replacement.

Defendant's witness Peterson testified that he had no experience with Kaneko elevators before joining defendant and that of the approximately 200 elevator service contracts he oversaw in St. Louis while employed with defendant, none of the other elevators serviced by defendant were Kaneko elevators. Further, he knew nothing of the company. He testified that the ring and worm gears could have been replaced without replacing the entire hoist machine at about a cost of $2000 to $3000 dollars per elevator.

Defendant moved for a directed verdict at the close of the plaintiff's evidence and again at the close of all of the evidence alleging that plaintiffs failed to establish the essential element of damages in that they suffered no diminution of value as was the proper measure of damages. Both motions were denied.

At the instruction conference, defendant offered three alternate instructions of damages based on MAI 4.02, discussing the diminution in value. The first refers to the diminution in value of the chemical building, the second of the elevator hoist machines and the third of the value of the ring gear. Plaintiffs offered a damage instruction based on MAI 4.01. The trial court rejected defendant's instructions and used MAI 4.01. The jury returned a verdict for the plaintiffs for damages in the amount of $60,259. The judgment also awarded plaintiffs prejudgment interest in the amount of $1,516.59.

Defendant moved for JNOV or in the alternative a new trial, alleging that: (1) plaintiff had failed to establish diminution of value as defendant had contended in its motions for directed verdict; (2) the trial court erred in giving MAI 4.01 as the damage instruction, and (3) the jury verdict was excessive because it awarded plaintiffs the full amount for replacing the entire hoist machine in all three elevators, when plaintiff witnesses admitted that the problems were with the ring gears. The motions were denied.

On appeal, defendant's points are directed to the damages and do not address its contractual liability. In its first point on appeal, defendant contends that the trial court erred in refusing to grant its motions for directed verdict and JNOV because plaintiffs failed to establish damages in that they admittedly suffered no diminution of value.

Our courts have established the rule, and have followed it for many years, that the measure of damages to real property is the difference between the market value of the property immediately before and immediately after the damage is sustained. *Gulf, M. & O.R. Co. v. Smith–Brennan Pile Co.*, 223 S.W.2d 100, 103–104 (Mo.App.1949). In cases, where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, there is an exception to the general rule. *Id.* To qualify for the cost of repair exception, plaintiffs must present evidence showing that the cost of repair is insignificant to the total market value of the building. *Id.*

The particular facts and circumstances of each case dictate which measure of damages is appropriate. *McLane v. Wal–Mart Stores, Inc.* 10 S.W.3d 602 (Mo. App. E.D.2000). However, the general rule in calculating damages for a breach of contract is that the non-breaching party is entitled to the cost of repairing or replacing the defective work. *Ken Cucchi Construction, Inc., v. O'Keefe*, 973 S.W.2d 520, 527 (Mo.App. E.D.1998). However, if the

cost of repair or replacement would constitute an economic waste, then the proper measure of damages is the diminished value of the property because of the defective work. *Id.*

■ The repair or replacement of the defective property is economic waste if the cost of repair or replacement is disproportionate to the diminution in the value of the property. *Id.* Once the landowner presents evidence on the cost of repair or replacement, the contractor has the burden of presenting evidence that the cost of repairing or replacing the property is disproportionate to the diminution in value of the property and if the contractor fails to present any evidence on the diminution of value of the property it fails to meet its burden of production. *Id.*

■ The rationale for the general rule in favor of cost of repairs recovery is based on the purpose of damages in a contract action, which is to restore a plaintiff to the position plaintiff would have been in if the contract had not been breached, rather than to place plaintiff in a better position. *McLane* 10 S.W.3d at 605.

■ Although the cases cited above involve defective construction and a breach of a lease covenant to repair, and this case involves breach of an agreement to maintain, the rationale for applying the cost of repair rule over the diminution in value rule is applicable. Here, defendant contracted to maintain, repair and replace the elevators as necessary in fulfilling the contract but failed to perform its contractual obligations. Generally in breach of contract cases, our goal is to award plaintiffs a sum that would put them in the same position as if defendant had fulfilled his obligations under the contract to repair or replace the elevators and an award of the cost of repairs would put plaintiffs in the position they would have been in had the defendant performed under the contract. Thus, the appropriate measure is the cost of repair. The trial court did not err in refusing to grant defendant's motions for directed verdict and JNOV. Point denied.

■ In its second point, defendant contends that the trial court erred in denying its motion for new trial, because the trial court improperly instructed the jury as to damages using MAI 4.01, while MAI 4.02 is the correct instruction where only property damage is at issue. MAI **4.01 Damages–Personal and Property,** provides:

> If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence.

MAI **4.02 Damages–Property Only,** provides,

> If you find in favor of plaintiff, then you must award plaintiff such sum as you may find from the evidence to be the difference between the fair market value (*here identify property*) before it was damaged and its fair market value after it was damaged, [plus such sum as you may find from the evidence will fairly and justly compensate plaintiff for the loss of use thereof during the time reasonably necessary for the property to be repaired or replaced.] (Emphasis in the original.)

The Notes on Use for MAI 4.02 contain a modification for those instances where cost of repair is the appropriate measure of damages, providing:

> If you find in favor of plaintiff, then you must award plaintiff such sum as you may find from the evidence to be the reasonable cost of repair of any damage to (*here identify property*) [plus such sum as you may find from the evidence will fairly and justly compensate plaintiff for the loss of use thereof during the time reasonably necessary for the property to be repaired or replaced.] (Emphasis in the original.)

■ Rule 70.01(b) states that when MAI is applicable in a particular case, such instruction shall be given to the exclusion of any other on the same subject. It has been the policy of the courts to require strict compliance with the requirements of MAI. *Sands v. R.G. McKelvey Bldg. Co.,* 571 S.W.2d 726, 730 (Mo.App. E.D.1978). In general, when an MAI is applicable, its use is mandatory and any deviation from or unnecessary modification of the applicable MAI is "presumptively prejudicial." *Id.*

■ In a cases such as this, where the damages sought are for damage to property only, the proper jury instruction for the submission of the question of damages is MAI 4.02. *Id.* The highlighted titles of the two MAI's indicate that 4.01 is to be used when personal or both personal and property damages are claimed and 4.02 is to be used in cases of property damage only. *Id.* Further, the Notes on Use to 4.02 state that "This instruction should be used in cases involving property damage only." *Id.* The Notes on Use are to be "religiously followed". *Id.*

Even in cases such as this one where plaintiffs contend that there is no prejudice because the damages awarded were the same as they would have been had the proper instruction been given, we have nonetheless granted a new trial, finding that the aim and purpose of MAI would not be served if the court is made to search the record and in some way speculate whether the jury verdict was thereby affected and plaintiff prejudiced. *Id*, at 731. Plaintiffs has not conclusively proved lack of prejudice, therefore we remand the case for a new trial on damages only, using MAI 4.02.

In its final point, defendant contends that the trial court erred in denying its motion for new trial because the jury verdict was excessive in that plaintiff was improperly awarded damages based on a faulty jury instruction and based on the cost of replacing three entire elevator hoist machines. In light of our resolution of the second point and remand of the case for a new trial on damages only, we need not address this point.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.