

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00416-CR

———————————————

KRISTOPHER KYLE RUSSELL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 44,489-C

Before Kerr and Birdwell, JJ.; and Lee Ann Dauphinot (Senior Justice, Retired, Sitting by Assignment)
Memorandum Opinion by Justice Dauphinot

**MEMORANDUM OPINION**

A jury convicted Appellant Kristopher Kyle Russell of murder, and he was sentenced to ninety-nine years' confinement. This court affirmed his conviction on appeal.[1] Appellant, pro se, now appeals the trial court's denial, without a hearing, of his fourth post-conviction request for DNA testing and for court-appointed counsel to represent him in seeking the testing and submission of subject samples to state and federal data bases for comparisons. He also appeals the trial court's denial of additional ancillary complaints. Because Appellant has not sustained his burden to show he is entitled to the requested DNA testing—and therefore not entitled to appointed counsel or a DNA comparison—and because Appellant's ancillary requests are not cognizable in an appeal from a post-conviction DNA-testing proceeding, the trial court did not err in denying his requested relief. We affirm.

Background Facts

This request for DNA testing is the fourth request Appellant has filed. Appellant filed his first request in 2014. The trial court denied that request and two subsequent requests. We summarize the facts pertinent to this more specific fourth request for DNA testing below.

---

[1]*See Russell v. State*, No. 02-06-00336-CR, 2008 WL 623961, at *1 (Tex. App.—Fort Worth Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication).

Complainant Lezark was murdered in her bedroom on the evening of January 5, or the morning of January 6, 2003.[2] Tony Fox, a police detective, responded to the murder scene.[3] Complainant had contusions on her head, a coaxial cable wrapped around her neck, a bloody fire extinguisher next to her body, and a laser pointer lying on her bed.[4] The cable and fire extinguisher were tested for DNA. A DNA analyst found Appellant's DNA and Complainant's DNA around the neck of the fire extinguisher. In addition, a palm print from the cable, a thumbprint and palm print from the fire extinguisher, and a partial thumbprint from the laser pointer were collected and identified as Appellant's.[5]

The medical examiner determined the cause of death to have been strangulation by a coaxial cable that had been wrapped around Complainant's neck three times and tied with a square knot.[6] Her head contusions were consistent with

---

[2]*Id.* at *1.

[3]*Id.* at *2.

[4]*Id.* at *1–2.

[5]*Id.* at *1.

[6]*Id.* at *1.

being hit by the fire extinguisher.[7]  There were no signs of forced entry into the house.[8]

Appellant testified at trial that he had met Complainant in an Internet chat room in late November 2002 and had entered into a sexual relationship with her by mid-December.[9]  Two of Complainant's neighbors testified they saw Appellant at her house on the afternoon of January 5, and Appellant admitted he was there that afternoon and evening.[10]  A coworker found Complainant's body the next morning when she failed to report to work.[11]

Complainant was estranged from her husband at that time.[12]  Appellant argues outside the record that Complainant and her husband were in the midst of a contentious divorce and that a court had issued a restraining order against the husband.

At trial, Appellant did not dispute the evidence that he had left his DNA and fingerprint on the bloody fire extinguisher or his palm print on the coaxial cable with

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.* at *1–2.

[12]*Id.* at *3.

4

which the killer had strangled Complainant.[13] Nor did Appellant dispute testimony that none of the DNA or fingerprint evidence connected Complainant's estranged husband to the crime scene.[14] Unidentified male DNA was found at the scene of the murder, including the same unknown male DNA beneath Complainant's fingernails and on her socks.

Issues on Appeal

In the interest of clarity, we state verbatim the issues listed by Appellant in his brief:

> ISSUE ONE: [Appellant] argues that the trial court should have appointed counsel for the DNA testing considering that he is indigent and there is a need for counsel.
>
> ISSUE TWO: [Appellant] maintains that there is UNKNOWN and untested DNA in the samples taken from the crime scene, the unknowns should be sent through the various databases f[o]r compar[is]on to [nationwide] profiles. Pursuant to Ch. 64.035.
>
> ISSUE THREE: [Appellant] argues that DNA testing should have been done as there was a lack of evidence to convict him, IF one would examine the evidence closely. Consider[:]
>
>> (A) "Bloody fingerprints" the D.A. used this phrase over and over in trial to explain the evidence. But, the fingerprints were not in blood.
>>
>> (B) The fingerprints were not whole but rather tiny fragments. No such expert testified for the defense, and some cases hold partials are inherently untrustworthy. Additionally, fingerprint

---

[13]*Id.* at *5.

[14]*Id.*

science is not without errors and this fact was never developed or explained to the jury in trial.

(C)      The conviction in part rests upon the ideas of "biomechanics" but the person advancing this notion in trial was not an expert in such—but rather an expert in "blood sp[]atter" patterns.

(D)   The DNA testing used to convict [Appellant] was based upon a false idea.  In trial the state's DNA expert . . . testified that the testing excluded the [murder victim's estranged] husband[, . . . .]  Her report does not list [her husband] as being excluded or even tested.

(E)   There is UNKNOWN DNA tissue beneath the nails of [the murder victim].  This indicates her attacker was injur[]ed by her.  This evidence was not tested against [her husband's] DNA nor was it sent through CODIS.

ISSUE FOUR:  The trial transcripts do not accurately reflect the trial or the issues.

We are to construe briefs liberally.[15] We thus construe Appellant's four issues in a manner consistent with the statutory framework of Chapter 64 ("Motion for Forensic DNA Testing") of the Texas Code of Criminal Procedure.[16]  Additionally, we address Appellant's issues in reverse order for ease of analysis.

Appellant's Ancillary Complaints (Fourth Issue and Part of Third Issue)

In his attempts to present his argument and discussion of his issues addressing the denial of DNA testing, including part of his third issue, Appellant ranges far

---

[15]*Love v. State*, 600 S.W.3d 460, 475 (Tex. App.—Fort Worth 2020, pet ref'd).

[16]*See* Tex. Code Crim. Proc. Ann. arts. 64.01–.05.

afield, discussing lack of motive, improperly admitted evidence, alleged perjury, newly discovered evidence, ineffective assistance of trial counsel, and speculation about actions and scenarios involving other people. He then discusses what he designates as a fourth issue, arguing that the trial record omits the State's having required him, in the presence of the jury, to swing the fire extinguisher that Appellant says the State argued was the murder weapon.

Appellant admits he is a layman in the law and lacks the necessary knowledge and training to pursue properly his requested testing. He concentrates, however, on the sufficiency of the evidence at trial and on trial errors, rather than on denial of DNA testing and appointed counsel. This appeal from the denial of Appellant's Chapter 64 request for DNA testing is not a proper vehicle for the various ancillary claims Appellant raises.[17] We therefore decline to address his fourth issue and the part of his third issue raising ancillary complaints. But because Appellant's arguments appear to be an untutored attempt to meet the Chapter 64 requirements for post-conviction forensic DNA testing, we address his broader issues of the trial court's denial of his request for post-conviction DNA testing and appointed counsel.

---

[17]*Weems v. State*, 550 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting that Chapter 64 does not confer jurisdiction on appellate court to consider collateral attack of underlying judgment or to review anything beyond Chapter 64's scope in appeal from denial of DNA testing); *In re Pettigrew*, No. 12-11-00377-CR, 2012 WL 951899, at *2 (Tex. App.—Tyler Mar. 14, 2012, orig. proceeding) (mem. op., not designated for publication) (holding that trial court has no jurisdiction to rule on motion seeking to correct alleged errors in its record once conviction affirmed on appeal and mandate carried out); *In re Pettigrew*, 301 S.W.3d 920, 922 (Tex. App.—Tyler 2009, orig. proceeding) (same).

Denial of DNA Testing (Second Issue and Remainder of Third Issue)

In his second and third issues, Appellant complains about the trial court's denial of post-conviction DNA testing of biological material found under the Complainant's fingernails—containing an unidentified DNA profile—and denial of a comparison of that material with known DNA profiles in the FBI and Texas Department of Public Safety databases.

Standard of Review and Applicable Law

The purpose of post-conviction DNA testing is to provide a means through which a defendant may establish his innocence by excluding himself as the perpetrator of the offense of which he was convicted.[18] Chapter 64 of the Texas Code of Criminal Procedure provides that a convicted person may submit a motion to the convicting court to obtain post-conviction DNA testing.[19] But before a trial court may order post-conviction DNA testing, the movant must show by a preponderance of the evidence (a greater than 50% chance) that had exculpatory test results been obtained through DNA testing during the trial of the offense, the movant would not have been convicted.[20] We review de novo a trial court's finding on this threshold

---

[18] *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007).

[19] Tex. Code Crim. Proc. Ann. art. 64.01; *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011).

[20] Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A); *Hall v. State*, 569 S.W.3d 646, 655–56 (Tex. Crim. App. 2019).

determination.[21] In doing so, we review the entire record, that is, all of the evidence that was available to, and considered by, the trial court in making its ruling, including testimony from the original trial.[22] The defendant may appeal a trial court's adverse determination.[23]

"Exculpatory results" means only results excluding the convicted person as the donor.[24] In considering the likelihood of conviction in the face of exculpatory results, we review only whether exculpatory results would alter the trial's evidentiary landscape.[25] We do not consider post-trial factual developments.[26]

Whether a third party's DNA would establish a greater than 50% chance that the defendant would not have been convicted depends on each case's circumstances.[27] In a given case, the presence of a third party's DNA may not have any tendency to

---

[21]*See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(2)(A); *LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) (noting that an Article 64.03(a)(2)(A) finding is a "threshold issue" to be determined before a trial court may order testing).

[22]*Asberry v. State*, 507 S.W.3d 227, 228 (Tex. Crim. App. 2016); *Flores v. State*, 150 S.W.3d 750, 752 (Tex. App.—San Antonio 2004, no pet.).

[23]*See* Tex. Code Crim. Proc. Ann. art. 64.05.

[24]*Hall*, 569 S.W.3d at 655–56.

[25]*Id.* at 656.

[26]*Id.*

[27]*Id.*

9

exonerate the defendant.[28]  And even when the presence of a third party's DNA may tend to be exonerating, the convicted person's burden will not be satisfied if the record contains other substantial inculpatory evidence independent of that for which the movant seeks DNA testing.[29]  But under some circumstances, such as when it is clear a lone assailant left the biological material, the presence of a third party's DNA is so strongly exonerating that the convicted person's burden will be met despite the existence of other substantial inculpatory evidence.[30]

<u>Analysis</u>

In the case now before this court, the trial court filed neither findings of fact nor conclusions of law.[31]  Having closely examined the entire record before us, however, we note that Appellant's palm print—which, as noted by the DPS fingerprint supervisor, "appear[ed] to be in blood"—was found on the coaxial cable used to strangle Complainant to death.  His thumbprint and his palm print—which also "appear[ed] to be in blood" as noted by the DPS fingerprint supervisor—as well as his DNA, were found on the fire extinguisher.  Appellant does not explain, nor

---

[28]*Id.*

[29]*Id.*

[30]*Id.* at 656–57.

[31]*See Skinner v. State*, 122 S.W.3d 808, 812–13 (Tex. Crim. App. 2003) (holding that detailed findings of fact and conclusions of law, while appreciated, were not required when trial court denied motion for post-conviction DNA testing for failure to prove Article 64.03 requirements).

10

does he point to evidence to show, that the mere presence of another person at the crime scene or the presence of a third person's DNA under Complainant's fingernails—evidence heard by the jury and on which it heard testimony explaining why it might have had nothing to do with the murder[32]—would exculpate him as perpetrator of the strangulation murder of Complainant.

Thus, Appellant failed to show by a preponderance of the evidence that he would not have been convicted if DNA testing confirmed the identity of the third person whose DNA was found under the Complainant's nails. Because Appellant did not make this threshold showing, the trial did not err by denying testing of the biological material from Appellant's trial. To the extent that Appellant argues as part of this issue that the trial court erred by failing to hold a hearing on his motion, he is mistaken.[33] We overrule the remainder of Appellant's third issue.

Furthermore, because Appellant is not entitled to comparison of the unidentified DNA against the FBI and DPS databases until the trial court has actually

---

[32]*Russell*, 2008 WL 623961, at *6.

[33]*See Rivera v. State*, 89 S.W.3d 55, 58–59 (Tex. Crim. App. 2002) (holding that, in contrast to when a trial court has granted a motion for DNA testing—in which case a post-testing hearing is required, "[n]othing in Article 64.03 requires a hearing of any sort concerning the trial court's determination of whether a defendant is entitled to DNA testing").

ordered DNA testing, we overrule his second issue challenging the trial court's denial of such a comparison.[34]

Denial of Appointed Counsel (First Issue)

In his first issue, Appellant complains about the trial court's failure to appoint counsel to assist him because he is indigent.

Our sister court in San Antonio has traced the history of Chapter 64 with regard to the appointment of counsel.[35] As originally written in 2001, Article 64.01(c) stated that a defendant was entitled to the appointment of counsel merely upon requesting counsel and establishing indigence.[36] The legislature, however, amended Article 64.01(c) effective September 1, 2003, to read, in relevant part, as follows: "The convicting court shall appoint counsel for the convicted person if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent."[37]

---

[34]Tex. Code Crim. Proc. Ann. art. 64.035.

[35]*Lewis v. State,* 191 S.W.3d 225, 227–28 (Tex. App.—San Antonio 2005, pet. ref'd).

[36]*Id.* at 227 (citing *Winters v. The Presiding Judge of the Criminal District Court Number Three of Tarrant County*, 118 S.W.3d 773, 775 (Tex. Crim. App. 2003) (holding that original version of Article 64.01(c) did not require a prima facie showing that a defendant was entitled to DNA testing before right to counsel attached)).

[37]*Id.* (citing Tex. Code Crim. Proc. Ann. art. 64.01(c)).

Thus, Appellant's reliance on his indigence alone is misplaced, as is his reliance on a 2002 opinion addressing appointment of counsel for a DNA-testing motion because when that case was decided, the language "the court finds reasonable grounds for a motion to be filed" had not yet been added to the statute.[38]  As the State argues, and Article 64.01(c) and case law appear to support,

> Under article 64.01, "even if the convicting court determines that a convicted person is indigent, the court is not required to appoint counsel if it finds there were no reasonable grounds for the motion to be filed." When a trial court denies a pro se motion for DNA testing, the court implicitly denies an accompanying motion for appointment of counsel.[39]

Because Appellant was not entitled to DNA testing under Article 64.03, the trial court did not reversibly err by denying him appointed counsel under Article 64.01(c).[40]  We overrule Appellant's first issue.

---

[38]*Gray v. State*, 69 S.W.3d 835, 837 (Tex. App.—Waco 2002, order) (per curiam) (quoting former version of Article 64.01(c)).

[39]*Weems*, 550 S.W.3d at 779 (noting that a motion for DNA testing and motion to appoint counsel are intertwined); *In re Gilmer*, No. 12-20-00063-CR, 2020 WL 975365, at *1 (Tex. App.—Tyler Feb. 28, 2020, orig. proceeding) (mem. op., not designated for publication); *Matthews v. State*, No. 09-16-00359-CR, 2018 WL 3146562, at *5 (Tex. App.—Beaumont June 27, 2018, no pet.) (mem. op., not designated for publication).

[40]*See In re Marshall*, 577 S.W.3d 581, 583 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding) (per curiam).

Conclusion

Considering the record as a whole, and applying the appropriate standard of review, we hold that because Appellant did not satisfy his burden of establishing the probability that exculpatory evidence exists that would establish a probability he would not have been convicted, the trial court did not reversibly err by denying Appellant's request for post-conviction DNA testing and comparison of the unidentified DNA material with the FBI and DPS databases, as well as by denying his request for court-appointed counsel.[41] We do not address matters raised ancillary to Chapter 64's requirements as they are more appropriately presented in an application for writ of habeas corpus. We therefore affirm the trial court's order.

/s/ Lee Ann Dauphinot
Lee Ann Dauphinot
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 20, 2021

---

[41]Tex. Code Crim. Proc. Ann. arts. 64.01–.03; *Hall*, 569 S.W.3d at 655.